NOTICE
Decision filed 09/07/16. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2016 IL App (5th) 150282

NO. 5-15-0282

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| SCOTT BUEKER, VIRGIL STRAETER, and RICHESON REAL ESTATE, LLC, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Respondents, | ) ) | |
| v. | ) ) | No. 13-L-276 |
| MADISON COUNTY, ILLINOIS; FRED BATHON; KURT PRENZLER, in His Official Capacity as Madison County Treasurer; JIM FOLEY; ALAN J. DUNSTAN; MARK VON NIDA; BARRETT ROCHMAN; KENNETH ROCHMAN; BLUE SKY VINEYARDS, LLC; CDBR, LLC; SABRE GROUP, LLC; SI SECURITIES, LLC; DENNIS BALLINGER, JR.; EMPIRE TAX CORPORATION; VISTA SECURITIES, INC.; JOHN VASSEN; JOSEPH VASSEN; V.I. INC.; SCOTT McLEAN; LAND OF LINCOLN SECURITIES, LLC; PRAIRIE STATE SECURITIES, LLC; ROBERT LUKEN; LUKEN INVESTMENT CO.; SCOTT SIERON; RAVEN SECURITIES, INC.; ILLINOIS MOBILE HOMES, LLC; ILLINOIS REALTY GROUP HOLDINGS, LLC; ILLINOIS REALTY GROUP, LLC; JOHN W. SCOTT; EDWARD BEASLEY; RLI INSURANCE CO.; and WESTERN SURETY COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Madison County, Illinois; Jim Foley; Barrett Rochman; Kenneth Rochman; Blue Sky Vineyards, LLC; CDBR, LLC; Sabre Group, LLC; SI Securities, LLC; Dennis Ballinger, | ) ) ) | |

1

Jr.; Empire Tax Corporation; Vista Securities, Inc.; John )
Vassen; Joseph Vassen; V.I. Inc.; Scott Sieron; Raven )
Securities, Inc.; Illinois Mobile Homes, LLC; Illinois Realty ) Honorable
Group Holdings, LLC; and Illinois Realty Group, LLC, ) William J. Becker,
Defendants-Petitioners). ) Judge, presiding.
_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Presiding Justice Schwarm and Justice Chapman concurred in the judgment and opinion.

## OPINION

¶ 1    The plaintiffs, Scott Bueker, Virgil Straeter, and Richeson Real Estate, LLC, filed a motion for class certification. The plaintiffs sought to recover damages for alleged losses resulting from the manner in which former Madison County Treasurer Fred Bathon conducted property tax sale auctions from 2005 through 2008. Following a hearing, the circuit court of Madison County granted class certification. For the reasons that follow, we affirm in part as modified, vacate in part, and remand for further proceedings.

¶ 2    Every year the Madison County Treasurer collects taxes on real property on behalf of taxing districts within the county. 35 ILCS 200/19-35, 20-5 (West 2012). If property owners fail to make timely payments, an automatic penalty of 1.5% is assessed for each month that the taxes are not paid. 35 ILCS 200/21-15, 21-20 (West 2012). Where the property taxes remain delinquent, the Property Tax Code sets forth the statutory procedure for the collection of the delinquent property taxes. 35 ILCS 200/21-70 *et seq.* (West 2012).

¶ 3    After various procedural steps, a tax sale is held where individuals and companies (known as tax buyers) have the opportunity to buy the right to collect the delinquent taxes from the delinquent taxpayers. 35 ILCS 200/21-70 *et seq.* (West 2012). The tax sale is

2

conducted on a parcel-by-parcel basis. The tax buyers do not bid a dollar amount for each parcel with delinquent taxes. Instead, the tax buyers bid a penalty (interest) rate that they are willing to charge the owner if the owner later redeems the property. 35 ILCS 200/21-215 (West 2012). The penalty rate can range by statute up to 18%, which is the maximum allowed by law. 35 ILCS 200/21-215 (West 2012). If there are no bids on a particular parcel, its delinquent taxes are awarded to the State of Illinois. 35 ILCS 200/21-225 (West 2012). A tax buyer who purchases delinquent property taxes is required to pay the entire amount of taxes and automatic penalties outstanding as well as open taxes for prior years. 35 ILCS 200/21-240 (West 2012). After the tax buyer delivers payment to the county, the tax buyer receives a "certificate of purchase" evidencing payment of the taxes. 35 ILCS 200/21-240, 21-250 (West 2012).

¶ 4    Property owners have the right to redeem their delinquent property taxes that were sold at the tax sale. 35 ILCS 200/21-345 (West 2012). In order to redeem the delinquent property taxes, a property owner must pay all taxes, automatic penalties, and costs paid by the tax buyer at the time of the sale as well as interest at the penalty rate percentage bid by the tax buyer at the sale. 35 ILCS 200/21-355 (West 2012). The penalty accrues at the rate set during the auction and compounds every six months if the property remains unredeemed. 35 ILCS 200/21-355 (West 2012). The increase is equal to the amount of the initial rate originally bid. 35 ILCS 200/21-355 (West 2012). The statutory period of redemption ranges from six months to 2½ years depending on the type of property. 35 ILCS 200/21-350 (West 2012). Redemptions occur at the county clerk's office, and the funds received for redemption are forwarded to the tax buyer once the tax buyer presents the applicable certificate of

3

purchase. 35 ILCS 200/21-355 (West 2012). The county does not retain the taxes or the penalty rate paid by the property owner. If the property owner fails to redeem the property taxes, the person or entity holding the certificate of purchase can file a petition for a tax deed, and, if ordered by the circuit court, the tax deed conveys merchantable title free and clear from any previous interest in the property. 35 ILCS 200/22-30 through 22-70 (West 2012).

¶ 5 The class-action plaintiffs are owners of real property in Madison County who failed to timely pay their real estate taxes and had their delinquent property taxes sold at a tax sale between 2005 and 2008. The plaintiffs named the following as defendants in the suit: Frederick Bathon, the former treasurer of Madison County; certain individuals and entities that purchased delinquent taxes between 2005 and 2008 (collectively "tax purchaser defendants"); Jim Foley, an employee of the Madison County treasurer's office; Madison County; and Kurt Prenzler, in his official capacity as the current Madison County treasurer.

¶ 6 The class-action complaint alleged the following causes of action: (1) civil conspiracy against all of the defendants except Madison County, Prenzler, and RLI Insurance; (2) money had and received against all of the defendants except Prenzler, Foley, and RLI Insurance; (3) violations of section 3(1) of the Illinois Antitrust Act (740 ILCS 10/3(1) (West 2012)) against all of the defendants except Madison County, Prenzler, and RLI Insurance; (4) violations of section 3(2) of the Illinois Antitrust Act (740 ILCS 10/3(2) (West 2012)) against all of the defendants except Madison County, Prenzler, and RLI Insurance; (5) violations of section 3(3) of the Illinois Antitrust Act (740 ILCS 10/3(3) (West 2012)) against all the defendants except Madison County, Prenzler, and RLI Insurance; (6) breach of fiduciary duty against Bathon; (7) an action against Bathon's bond as treasurer and collector

4

of Madison County; and (8) sale in error against Madison County and Prenzler.  Madison County is only named as a defendant in the money had and received count and the sale in error count.

¶ 7     The class-action complaint alleged that Bathon and the tax purchaser defendants conspired to implement a "no trailing bid" policy at the property tax sale auctions, which required all bidders to bid at once with the winning bid being the lowest bid heard by the auctioneer.  The complaint alleged that the named tax purchaser defendants entered into an agreement with Bathon that each would bid the statutory maximum of 18% in the simultaneous bidding.  The complaint also alleged that Bathon used a seating chart to ensure that the tax purchaser defendants were recognized by the auctioneer as winning bidders and directed the auctioneer to disperse the winning bids from the various auctions between the tax purchaser defendants.  The complaint alleged that Bathon received campaign contributions in exchange for his participation in the fixed tax sales.  The complaint alleged that the actions of Bathon and the tax purchaser defendants resulted in excessive penalty rates being bid and that those excessive rates were ultimately charged to delinquent taxpayers who sought to redeem their property taxes after a tax sale auction.

¶ 8     The class-action complaint explained that in February 2013, prior to the filing of the class-action complaint, Bathon pled guilty in federal court to a Sherman Act violation relating to his handling of the tax sale auctions held in 2005 through 2008.  Scott McLean, Barrett Rochman, and John Vassen, other named defendants in the class action, also pled guilty to federal antitrust charges stemming from their involvement.  As part of their guilty pleas, these defendants admitted that they reached an implicit mutual understanding that they

5

would typically bid only the statutory maximum interest rate of 18% and not compete to reduce the interest rate when purchasing property tax liens.

¶ 9    In the motion seeking class certification,[1] the plaintiffs argued that the four prerequisites for maintaining a class action had been met.  Thereafter, the various defendants[2] filed oppositions to the motion for class certification.  The objections, *inter alia*, argued that class certification should be denied, as individual questions predominated over issues common to the class, specifically with regard to damages.  In particular, the defendants argued that the resolution concerning whether a delinquent taxpayer was damaged by the alleged wrongful conduct and in what amount would require an individualized evaluation of each parcel sold at the tax sale, as the amount a tax purchaser would be willing to bid on a particular tax lien depended on numerous factors and the subjective judgment of that tax purchaser.

---

[1]The class-action plaintiffs rely on the motion for class certification filed on May 10, 2013, by Geralyn Lindow.  Lindow is no longer a class representative because the plaintiffs sought leave to withdraw certain original plaintiffs, including Lindow, and proceed on their motion for class certification with Bueker, Straeter, and Richeson Real Estate as the named class representatives.

[2]Because the objections contained similar arguments, we will address them as one for brevity purposes.  Where there are differences in the arguments that are relevant to this appeal, we will address those differences.

6

¶ 10    In support of its argument, the defendants pointed to the conclusions reached by the United States Department of Justice (Department) following an investigation of the tax auctions.  According to the Department, the tax buyers at the tax sale auctions selectively purchased tax liens based upon a number of subjective variables, such as the location of the property, the state of repair of the structure on the land, the homeowner's payment history, the size of the tax bill, the assessed value of the property, and the real estate market where the property was located.  The Department noted that at every Madison County tax sale, even those conducted with competitive bidding, a significant portion of the sales resulted in homeowners being charged the statutory maximum 18% penalty rate.  It explained that tax buyers evaluated the risk factors differently and, as a result, were many times unwilling to purchase certain tax liens unless they received the highest interest rate.  The Department concluded that legitimate economic considerations routinely resulted in many tax liens being sold for 18% even during a perfectly lawful tax sale that was conducted free of collusion. The Department concluded that some of the homeowners with delinquent property taxes sold at the tax auctions would have been charged 18% even had the scheme never existed.

¶ 11    To determine out-of-pocket loss for restitution purposes, the Department was faced with the task of determining which properties would have received which rates during the 2005 to 2008 auctions in the absence of the alleged conspiracy.  Following its investigation, the Department concluded that the "data can tell us averages, but it cannot tell us with any level of certainty *which particular properties* experienced inflated tax bills nor can the data alone tell us what interest rate would have been bid in the absence of the scheme." (Emphasis in original.)

7

¶ 12     The Department further concluded that such a determination would require the evaluation of a number of subjective variables and that it was entirely impracticable to retain an expert to review and assess each of the 9299 parcels for which tax liens were sold during the alleged scheme.  In reaching this conclusion, the Department consulted with two experts in the field of Illinois tax sales.  The consensus was that it was not possible to calculate out-of-pocket loss at the individual level in this scenario.  The Department also consulted with Kent Prenzler, as Prenzler had developed his own methodology for computing the damages.  However, the Department concluded that Prenzler's approach was an estimate based on averages.   The Southern District of Illinois agreed and found that it was "highly impracticable to perform a complete accounting of the losses to each individual victim given the complex issues of fact related to the large number of victims."   Thus, the court found that no restitution award could be entered.

¶ 13     Relying on the federal proceedings, the defendants in this class-action case argued that there were questions unique to individual class members in regard to the issues of causation and damages, which precluded the use of the class-action device.  The defendants argued property owners would be required to prove, on an individual basis, that the penalty rate was artificially inflated for that particular property in any given year and not all of the property owners in the class would be able to prove that the alleged conspiracy caused damages.  Further, the defendants argued that for those class members who were able to prove that the delinquent taxes on their particular properties would have received lower penalty rates in the absence of the alleged conspiracy, these class members would also have to prove what penalty rate would have been awarded for the delinquent taxes on their

particular property. Therefore, each property owner would be required to adduce evidence to prove the amount of damages by proving a specific penalty rate that his particular property would have received for its delinquent taxes. Because this would require individual trials for each claimant for each property, the defendants argued that individual issues would predominate over the issues common to the class.

¶ 14   In addition, the defendants argued that the plaintiffs failed to establish that they or their counsel would adequately protect the interests of the class and failed to prove that pursuing a class action was an appropriate method for the fair and efficient adjudication of the controversy. Moreover, Madison County filed an opposition to class certification with regard to the specific counts that were alleged against it, *i.e.*, sale in error and money had and received. Madison County argued that the plaintiffs had failed to explain how the claims against it for sale in error and money had and received could be addressed on a class-wide basis and that the plaintiffs had failed to establish that they had a viable claim for sale in error and money had and received against Madison County, which was a threshold question for class certification.

¶ 15   Following a hearing, the circuit court entered an order for class certification. The court noted that the numbers varied but that it was generally agreed that a significant number of properties were sold in those years and that the Department noted that almost 10,000 delinquent tax sales occurred in the relevant time. Thus, the court concluded that the numerosity requirement for class certification was met.

¶ 16   In addition, the circuit court found that the predominance of common questions of law or fact requirement for class certification had been satisfied. Although the court noted that

9

various defendants were charged with involvement under varying theories of liability in various counts of the complaint, the court concluded that the central issue was the involvement of the defendants in the alleged tax sale scheme. The court stated as follows with regard to the predominance issue:

"If any or all defendants are not liable under any particular theory or count, the jury or the court can so find. The court fails to see how having multiple trials for what is essentially the same issue does anything other than create multiple cases and multiple possibilities for an inconsistent result. If each person whose property was sold for delinquent taxes in the alleged fraudulent tax sales filed a separate suit alleging various theories of liability, this court, in the absence of a motion to consolidate, would likely consolidate the separate claims of the separate plaintiffs for trial on its own motion. Any unrelated or purely personal claims could be severed."

¶ 17   Furthermore, the circuit court concluded that there was no substantial argument that counsel for the proposed class was inadequate. As for the adequacy of the class representatives, the court noted that the class members have had property sold at tax sales in the years at issue. The court noted that the most relevant issue was the defendants' involvement in the alleged fraudulent tax scheme, which was generally alleged to be the same in each year. Thus, the court concluded that the class members, with the possible

10

exception of Richeson,[3] would adequately represent the interest of the class of people allegedly damaged by the tax sale scheme.

¶ 18    Regarding damages, the circuit court acknowledged that the issue was "somewhat problematic" and that real estate was unique.  However, the court stated as follows:

"The problem is that if the alleged tax sale scheme is proved true, all or some of the defendants created a system whereby it is difficult if not impossible for an individual plaintiff to prove that a lower rate would have been bid and what that rate would have been for a particular piece of property.  The court fails to understand how defendants, if liable, can essentially rig the game so that they can illegally obtain the money and then say, 'We know we got the money illegally, we know that it belongs to the group or portions of the group, we don't know which ones of the group are the owners, and because you, the owners, can't prove your damage, we get to keep the money.' "

¶ 19    The court acknowledged that the plaintiffs did have to prove damages but stated that liable defendants did not get to keep the money because their conduct made it difficult to determine the amount of damages.  The court concluded that it was satisfied that an appropriate method to determine damages could be reached.

¶ 20    Thus, the circuit court certified the following class: "all persons who owned any parcel of property that was sold[4] at a Madison County tax sale auction in the years 2005,

_____

[3]The circuit court did not set forth any reasoning as to why Richeson might not be an adequate class representative.  We discuss Richeson in further detail later in this decision.

2006, 2007, and/or 2008 and with respect to which a Certificate of Purchase was obtained at such auction in response to a penalty rate bid of 12% or higher. This class does not include any property owners whose property was not bid upon at the relevant tax sale and was therefore forfeited to the State of Illinois."

¶ 21  The defendants filed a petition for interlocutory review pursuant to Illinois Supreme Court Rule 306(a)(8) (eff. Feb. 16, 2011). This court denied leave to appeal. The defendants then filed a petition for leave to appeal to the supreme court. The supreme court denied leave to appeal but entered a supervisory order directing this court to vacate its previous order denying leave to appeal and to allow the petitions for leave to appeal. On January 6, 2016, this court granted the defendants leave to appeal.

¶ 22  The decision regarding class certification is within the discretion of the circuit court and will not be disturbed on appeal unless the circuit court abused its discretion or applied impermissible legal criteria. *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 447 (2006). In exercising its discretion, the court should err in favor of granting class certification. *S37 Management, Inc. v. Advance Refrigeration Co.*, 2011 IL App (1st) 102496, ¶ 15. However, the court's discretion is not unlimited because the court is bound by and its discretion must be exercised within the framework of the civil procedure rule governing class actions. *Smith*, 223 Ill. 2d at 447. In making its decision as to whether to certify a class, the court may

_____

[4]Real estate is not "sold" at the tax sale auctions. Instead, the right to collect the delinquent property taxes on a certain parcel of property is what is being sold.

12

consider any matters of fact or law properly presented by the record, which includes the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may have been adduced at the hearings. *Gordon v. Boden*, 224 Ill. App. 3d 195, 199 (1991). The scope of appellate review is limited in that a reviewing court evaluating a circuit court's decision to certify a class may not undertake an independent, *de novo* evaluation of the facts. *S37 Management, Inc.*, 2011 IL App (1st) 102496, ¶ 15.

¶ 23    Certification of a class action in Illinois is governed by section 2-801 of the Code of Civil Procedure (Code), which sets forth four prerequisites for maintaining a class action: the class is so numerous that joinder of all members is impracticable; there are questions of fact or law common to the class that predominate over any questions affecting only individual members; the representative parties will fairly and adequately protect the interest of the class; and the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (West 2012). The party seeking class certification has the burden of establishing the above statutory prerequisites. *Wheatley v. Board of Education of Township High School District 205*, 99 Ill. 2d 481, 486 (1984). The circuit court must find that the four prerequisites are present before it can certify the class. *Id.*

¶ 24    Turning to the numerosity requirement, the defendants do not seem to dispute that the class is so numerous that joinder of all members is impracticable. In its order approving class certification, the circuit court indicated that the numbers vary but that it is generally agreed that a significant number of delinquent property taxes were sold from 2005 through 2008, the time period during which the alleged conspiracy occurred. The court noted that the

Department had figured that almost 10,000 delinquent tax sales took place in the relevant time period. This provides an ample basis for the court's decision that joinder of all members is impracticable. Thus, the court did not abuse its discretion in finding that the first requirement was established.

¶ 25 We next consider the commonality and predominance prerequisite for class certification. The statutory requirement is met where (1) there are questions of fact or law common to the class and (2) these common questions predominate over questions affecting only individual members of the class. *Hall v. Sprint Spectrum, L.P.*, 376 Ill. App. 3d 822, 831 (2007). "Determining whether issues common to the class predominate over individual issues requires the court to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class." *Smith*, 223 Ill. 2d at 449. This inquiry requires the court to look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law. *Id.*

¶ 26 The predominance test is "not whether the common issues outnumber the individual ones, but whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Id.* at 448-49. To satisfy this requirement, the plaintiff must establish that the successful adjudication of the plaintiff's individual claims will establish a right of recovery in favor of the other class members. *Hall*, 376 Ill. App. 3d at 831. Where the circuit court concludes that common questions of fact or law predominate over the individual issues, the existence of questions that apply only to individual class members will

14

not defeat the predominating common question. *S37 Management, Inc.*, 2011 IL App (1st) 102496, ¶ 17.

¶ 27     With regard to the commonality requirement, a common issue may be shown where the claims of the individual class members are based upon the common application of a statute or where the proposed class members are aggrieved by the same or similar conduct or a pattern of conduct. *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538, 548 (2003). The plaintiff's complaint is based upon allegations of civil conspiracy, breach of fiduciary duty, money had and received, and violations of the Antitrust Act. 740 ILCS 10/3 (West 2012).[5] The asserted claims are predicated on the allegation that the named defendants conspired to artificially inflate the penalty rate bid price on delinquent property taxes at the 2005 through 2008 tax sale auctions. The plaintiffs argue that the common questions of fact or law in this case include (1) the manner as to how the Madison County tax sales were conducted for the years in question, (2) whether the defendants made campaign contributions to Bathon, (3) the number of parcels successfully bid on by each of the defendants, (4) whether the defendants participated in the conspiracy, (5) whether the "no trailing bid" policy comported with Illinois law, and (6) whether the "no trailing bid" policy resulted in increased penalty bids. Because the plaintiffs have identified issues common to the class, we conclude that the circuit court did not abuse its discretion or consider

_____

[5]We will address the sale in error claim and money had and received claim against Madison County later in this decision.

15

impermissible legal criteria when it determined that a common issue of law or fact existed in the instant case.

¶ 28   We now turn to the predominance requirement.  The tax purchaser defendants argue that in order for the plaintiffs to bring a claim under the Antitrust Act, the plaintiffs must have suffered an injury.  740 ILCS 10/7(2) (West 2012).  The defendants argue that in certifying the class, the circuit court failed to account for the fact that in the years before and after the alleged conspiracy, a significant percentage of the delinquent taxes sold at the Madison County tax auctions typically went at the maximum 18% penalty rate.  Thus, it was likely that some of the delinquent tax owners would have been charged the 18% penalty rate even had the alleged scheme never existed.

¶ 29   In addition, the defendants argue that the common questions identified by the plaintiffs are readily proven in that some of the defendants have pled guilty to the conspiracy in federal court and that the remaining common questions can be resolved by reviewing publicly available information relating to the relevant tax sales and campaign contributions. "[W]hen an individual question does exist which is more time consuming and more difficult to prove than the common question which is readily proved, that situation tends to negate the predominant status of the common question." *Rodmaker v. Johns Holding Co.*, 205 Ill. App. 3d 520, 526 (1990).  The defendants argue that the individualized determinations as to whether the plaintiffs incurred damages as well as the amount of damages will predominate over the readily proven common questions.  In support, the defendants cite *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441 (2006), and *Comcast Corp. v. Behrend*, 569 U.S. ___, 133

16

S. Ct. 1426 (2013), for the proposition that class certification is improper where individual questions overwhelm class issues.

¶ 30    In *Smith*, a case involving a mass tort personal injury class action arising from a train derailment exposing plaintiffs to toxic chemicals, our supreme court concluded that class certification would be inappropriate where proof of proximate causation and damages would be highly individualized and would consume the bulk of time at trial. 223 Ill. 2d at 458. The court reasoned that proof of proximate causation would depend on an individual assessment of a variety of factors, such as whether and to what extent each member of the class was exposed to the chemicals, and that the members of the proposed class had sought a variety of types of damages. *Id.* at 454. Similarly, in *Comcast*, the United States Supreme Court concluded that a class should not be certified where the named plaintiffs in the class-action suit failed to provide a methodology for calculation of damages on a class-wide basis. 569 U.S. at ___, 133 S. Ct. at 1432-33. The court stated that where damages are not susceptible of measurement on a class-wide basis, questions of individual damage calculations would inevitably overwhelm questions common to the class. *Id.* at ___, 133 S. Ct. at 1432-33.

¶ 31    In response, the plaintiffs argue that the mere fact that damages may need to be individually calculated does not defeat class certification under Illinois law. See *Hall*, 376 Ill. App. 3d at 831-32 (the fact that some members of the class are not entitled to relief will not bar class certification). Following the litigation of common questions, questions that are peculiar to individual class members, such as damages, may be determined in ancillary proceedings. *Id.* at 832. "The fact that the class members' recoveries may be in different amounts, which must be determined separately, does not necessarily mean that the common

17

questions do not predominate." *Id.* If individual damage determinations are necessary, the court can utilize various procedures to determine damages, including the creation of subclasses. *Id.* Furthermore, if the class becomes unmanageable at some later time in the litigation, the court always has the option to set aside the class certification or a portion of it. *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1075 (1988).

¶ 32    In support of their argument that the necessity of individual damage calculations will not defeat class certification, the plaintiff cites *Alexander v. Q.T.S. Corp.*, No. 98 C 3234, 1999 WL 965485 (N.D. Ill. Sept. 30, 1999), a federal district court case that dealt with class certification in a case involving a similar property tax auction context as the instant case.[6] In *Alexander*, the plaintiff filed a class-action complaint alleging that during the 1996 Cook County delinquent property tax sale, the defendants conspired to artificially inflate the penalty rate at which delinquent taxes were sold at the tax sale auction. 1999 WL 965485, at *1. The district court concluded that the plaintiffs had established commonality, as establishing the existence of the conspiracy was an issue common to the class. *Id.*; see Fed. R. Civ. P. 23(a). Because the plaintiffs sought certification based on Rule 23(b)(3), the

---

[6]Section 2-801 of the Code is patterned after Rule 23 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23), and federal decisions interpreting Rule 23 are persuasive authority with regard to the determination of class certification in Illinois. *Smith*, 223 Ill. 2d at 447-48.

18

predominance requirement was required to be met.[7] See Fed. R. Civ. P. 23(b)(3). The court concluded that the common issues predominated over individual concerns because any individual questions that may exist among class members with respect to damages did not defeat certification of an antitrust class action for liability purposes. *Alexander*, 1999 WL 965485, at \*4. Thus, the court certified a liability class, noting that if the court determines that liability has been proven, it will consider the option of certifying a subclass on the damage issue. *Id.*

¶ 33   In the instant case, the circuit court certified the following class:

"all persons who owned any parcel of property that was sold at a Madison County tax sale auction in the years 2005, 2006, 2007, and/or 2008 and with respect to which a Certificate of Purchase was obtained at such auction in response to a penalty rate bid of 12% or higher. This class does not include any property owners whose property was not bid upon at the relevant tax sale and was therefore forfeited to the State of Illinois."

---

[7]The commonality requirement in Rule 23(a), *i.e.*, the requirement of a question of law or fact common to the class, is a looser standard than the class certification standard of predominance required under section 2-801. However, where the plaintiffs move for class certification based on Rule 23(b)(3), authorization of the class is permitted where the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

¶ 34    The court did not specifically limit certification for liability purposes only.  At a hearing concerning the appropriate definition for the class, the court indicated that it would consider any arguments regarding bifurcation of the trial.  The court explained that liability should be determined first, as it was relatively more straightforward, and then the damages issue could be determined separately.  However, the court did not rule on this issue as the defendants had indicated their intention to seek an appeal on the issue of certification.  Thus, we will consider whether the order certifying the class for purposes of liability as well as damages was an abuse of discretion.

¶ 35    Although we recognize that individual questions of injury and damages do not defeat class certification, we find that the plaintiffs have not demonstrated that individual damages are calculable on a class-wide basis.  See *Comcast Corp.*, 569 U.S. at ___, 133 S. Ct. at 1433 (the plaintiff must show that the damages are susceptible of measurement on a class-wide basis in order to maintain class certification).  This conclusion is supported by the Department's finding that an individualized review of each particular parcel of property would be required to calculate restitution and by the fact that the plaintiffs have not provided any methodology to calculate damages on a class-wide basis.  Without a methodology to calculate damages on a class-wide basis and given the unique characteristics of real property as well as the subjective nature of the bidding process, we conclude that the calculation of actual damages would be too individualized to be handled as part of the class action.  Thus, we conclude that the court abused its discretion in finding that the individual issues as to actual damages would not predominate over the common issues.

¶ 36    That being said, we conclude that it was not an abuse of the circuit court's discretion to certify a class for liability purposes only, as we find that common issues predominate over individual concerns involving liability.  Although we recognize that four of the defendants pled guilty to the conspiracy in federal court, the determination of whether the remaining defendants, including Foley,[8] were involved in the unlawful behavior is still at issue in the case.  Thus, the class members will be required to prove that these remaining defendants were a part of the alleged conspiracy.

¶ 37    Antitrust conspiracies often have to be proven from inferences drawn from the circumstantial evidence.  *Baker v. Jewel Food Stores, Inc.*, 355 Ill. App. 3d 62, 68 (2005). All class members will rely on the same discovery, same witnesses, and other evidence to prove the existence of the conspiracy, whether the remaining defendants were part of the alleged conspiracy, and a causal connection between the conspiracy and any injury. Accordingly, we amend the class definition to limit the class to liability only.  If the court determines that liability is proved, the court can then consider the possibility of certifying subclasses on the damages issue or some other appropriate procedure.  *Alexander*, 1999 WL 965485, at *4.

¶ 38    The defendants argue that different statutes of limitations apply to the various counts alleged in the plaintiffs' complaint and that the individual statute of limitations issues would predominate over the issues common to the class.  Specifically, the defendants argue that

---

[8]Foley claims that he was not the auctioneer at the tax sale who picked the winning bids and that he was not even present at the 2008 tax sale.

there is a four-year statute of limitations for the antitrust conspiracy action as well as the conspiracy claim. The defendants argue that the statute of limitations commenced when the delinquent property taxes were sold at the tax sale auctions. Moreover, the defendants argue that the plaintiffs' invocation of the discovery rule in their pleadings would result in individual inquiries to determine whether each class member's claim is time-barred. Although we recognize that this is an issue that will need to be determined, commonality is not destroyed where class members may be affected differently by the applicability of the statute of limitations. *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 677 (2006). Thus, we do not find that the circuit court's decision to certify a class action where class members may be affected differently by the statute of limitations was an abuse of discretion.

¶ 39    Because we have concluded that the common questions predominate over the individual issues in a liability-only class, we must consider whether the remaining requirements for class certification have been met. The next class-certification requirement at issue is whether the plaintiffs have established that they will fairly and adequately represent the interests of the putative class.

¶ 40    Section 2-801(3) of the Code requires that the representative parties will fairly and adequately protect the interests of the class. 735 ILCS 5/2-801(3) (West 2012). The purpose behind the adequate-representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Hall*, 376 Ill. App. 3d at 832. The test applied to determine adequacy of representation is whether the interests of those who are not parties are the same as those who are not joined and whether the litigating parties fairly represent those not joined. *Id.* The

proposed class action plaintiff must be a member of the proposed class, *i.e.*, must be able to maintain an individual cause of action against the defendant. *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 810 (2007).

¶ 41    A representative will not be disqualified merely because his claim is not exactly the same as the other members of the class. *Purcell & Wardrope Chartered*, 175 Ill. App. 3d at 1078. "It is only necessary that the representative not seek relief antagonistic to the interests of other potential class members." *Id.* The named representatives' interests must not appear collusive. *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1004 (2004). Moreover, the class attorney for the representative party must be qualified, experienced, and generally able to conduct the proposed litigation. *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981).

¶ 42    Here, the class-action complaint named Bueker, Straeter, and Richeson Real Estate as the proposed class representatives. Bueker failed to pay real estate property taxes for 2006. The delinquent taxes were sold at the 2007 tax sale, and they were purchased by defendant John Vassen at an 18% penalty rate. Bueker's mortgage company redeemed the taxes. Straeter owns eight properties in Madison County where the delinquent property taxes were sold at tax sales in 2005 and 2007 at an 18% penalty rate. The taxes were purchased by seven different tax purchasers, two of which were not a party in the action at the time of class certification. Straeter redeemed all of these delinquent property taxes. Richeson Real Estate, a business solely owned by Guideon Richeson, had delinquent property taxes purchased in the 2008 tax sale auction by two nondefendants and defendant John Vassen. Richeson redeemed those property taxes.

23

¶ 43 The defendants argue that the plaintiffs have failed to allege any facts indicating that the named representatives will adequately represent the interests of the class for the following reasons: (1) the plaintiffs did not have delinquent property taxes sold at the 2006 tax sale; (2) the plaintiffs did not have taxes purchased by all of the named defendants, particularly Scott Sieron and Illinois Realty Group; (3) the plaintiffs had their taxes purchased by individuals and entities who are not defendants; and (4) the plaintiffs did not have a tax deed issued after the tax sale and thus are not representative of anyone who had a tax deed issued for their property. In addition, the defendants noted that the circuit court, without explanation, questioned whether Richeson Real Estate was an adequate class representative and argued that without Richeson Real Estate as a named representation, there would no longer be a representative plaintiff for the 2008 tax sale.

¶ 44 With regard to each representative, the defendants argued that Bueker could not be a named class representative in a class action based on the Antitrust Act because the Act precludes indirect purchasers from pursuing class-action claims. The defendants argue that Bueker was an indirect purchaser because his lender redeemed the taxes and passed on the cost, including the interest and penalties, to him by adding it to his mortgage loan. The defendants argue that Straeter is not an adequate class representative in that his claims are time-barred. Last, the defendants argue that Richeson Real Estate was not an adequate representative because Richeson is a business entity whose interests, goals, and financial expectations differ from putative class members whose parcels contained their personal homes.

24

¶ 45 The circuit court concluded that the class members have had delinquent taxes sold at tax sales in the years at issue and that the most relevant issue is the involvement in the alleged fraudulent tax scheme, which was generally alleged to be the same in each year. The court noted that it was satisfied that the class members with the possible exception of Richeson would adequately represent the interest of the class of people allegedly damaged by the tax-sale scheme. Thus, the court found that the adequacy of representation requirement is met. The court also concluded that there was no substantial argument that counsel for the proposed class was inadequate.

¶ 46 The interests of the named plaintiffs are the same as those of the absentee class members, *i.e.*, to seek damages for any inflated penalty rates and redemption amounts that resulted from the alleged conspiracy. Every named class representative had their delinquent property taxes sold at the tax sale auction during the time period that the alleged conspiracy occurred. Each class representative redeemed the property, potentially paying inflated penalty fees that were the result of the alleged conspiracy. Thus, we conclude that the circuit court did not abuse its discretion in finding that the adequate-representation requirement was met. If the adequacy of the representation by the named plaintiffs becomes an issue or is questioned at a later time, the circuit court could, if necessary, modify the class structure or decertify the class. See *Purcell & Wardrope Chartered*, 175 Ill. App. 3d at 1078. With regard to the allegation that Bueker could not maintain an antitrust class action as an indirect purchaser, if the court determines that the allegation has merit, the court could modify the class structure to reflect that finding. Further, the court found that there is no substantial

argument that counsel for the proposed class is inadequate. We conclude that this finding was not an abuse of the court's discretion.

¶ 47    We now turn to the fourth requirement for the maintenance of a class action, *i.e.*, whether the class action is an appropriate method for fairly and efficiently adjudicating the controversy. See 735 ILCS 5/2-801(4) (West 2012). In determining whether this requirement has been met, the circuit court considers whether a class action can best secure the economies of time, effort, and expense and promote uniformity or whether a class action can accomplish the other ends of equity and justice that class actions seek to obtain. *Gordon*, 224 Ill. App. 3d at 203.

¶ 48    Here, the class action certification for the purpose of liability is an appropriate method for fairly and efficiently adjudicating the liability issue. Where the first three prerequisites for the maintenance of a class action are established, it is evident that the fourth requirement has been fulfilled as well. See *Hall*, 376 Ill. App. 3d at 833-34. Because we have concluded that the first three prerequisites have been met with regard to a class certified for liability purposes, we may consider the fourth requirement fulfilled.

¶ 49    Furthermore, defendant Madison County argues that the circuit court abused its discretion in granting class certification in a case where the plaintiffs are incapable of stating an actionable claim against Madison County. As a threshold matter, class certification is improper where the putative class representative cannot state a valid cause of action against the defendant. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72 (2007). In the present case, Madison County was named in two of the counts in the class-action complaint: sale in

26

error and money had and received. Madison County argues that the plaintiffs cannot maintain a valid cause of action for either claim against Madison County.

¶ 50 A claim for sale in error is a statutory action arising under section 21-310 of the Property Tax Code (35 ILCS 200/21-310 (West 2012)). The claimant seeking a sale in error is generally asking the circuit court to undo the sale of a specific parcel's taxes for an enumerated reason. See 35 ILCS 200/21-310(a), (b) (West 2012). Subsections (a) and (b) specifically address who can file a sale in error claim: subsection (a) discusses the county collector applying for a sale in error, while subsection (b) addresses the owner of the certificate of purchase applying for a sale in error. 35 ILCS 200/21-310 (a), (b) (West 2012).

¶ 51 Madison County argues that the plaintiffs, as the property owners and not the tax purchasers, cannot recover under the plain language of the sale in error statute. In support of this position, Madison County cites *In re Application of the County Collector for Judgment of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1979 & Prior Years*, 169 Ill. App. 3d 180, 185 (1988), which held that the sole person who is interested in a refund of tax-sale money and therefore the only one who can make representations to the county clerk to induce a sale in error is the tax purchaser. Madison County also cites *La Salle National Bank v. Hoffman*, 1 Ill. App. 3d 470, 474 (1971), which concluded that sale in error relief is not granted at the insistence of the property owner who ought to have paid the taxes for which the real estate was sold. In addition, Madison County argues that a sale in error cannot occur where a property has been redeemed, a requirement that cannot be satisfied by any of the plaintiffs. See 35 ILCS 200/21-310(d), 22-35, 22-50 (West 2012).

27

¶ 52    The plain language of the statute allows the county collector and the owner of a certificate of purchase to seek a sale in error.  There is nothing in the statutory language allowing the delinquent property tax owner to bring a statutory sale in error cause of action against the county.  Although the plaintiffs argue that they can move in equity to set aside the tax sale pursuant to *West Suburban Hospital Medical Center v. Hynes*, 173 Ill. App. 3d 847, 853 (1988), we note that the plaintiffs did not move for class certification on the basis of equity.  Instead, the plaintiffs sought monetary damages within the confines of the statute.  Further, unlike *West Suburban Hospital Medical Center*, the plaintiffs did not claim that the underlying assessment of the property taxes by Madison County was improper or unauthorized by law.  Accordingly, we find that the plaintiffs cannot state an actionable statutory claim for sale in error against Madison County and Prenzler, in his official capacity as the current treasurer, and, as a result, the claim cannot be certified as part of the class action.

¶ 53    Madison County next argues that the plaintiffs cannot state an actionable claim for money had and received.  A cause of action for money had and received is maintainable where defendant has received money that in equity and good conscience belongs to the plaintiff.  *Drury v. County of McLean*, 89 Ill. 2d 417, 425-26 (1982).  A money had and received claim is an equitable action and is similar to a claim for unjust enrichment.  *Id.* at 426; *Belden v. Perkins*, 78 Ill. 449, 451 (1875).  The plaintiffs in the present case have alleged no facts suggesting that Madison County retained any money as a result of the alleged conspiracy.  Madison County acknowledged that in order for a delinquent property tax owner to redeem his property, the owner was required to pay the outstanding property

28

taxes as well as the penalty amount to the county clerk. However, Madison County explained that it did not retain a benefit from the alleged conspiracy in that once a redemption payment was made, it was passed along to the tax purchaser. We agree with Madison County that a money had and received claim cannot be brought against an entity that was a pass through for the redemption payment and received no unjust benefit from those payments. Thus, we conclude that the plaintiffs cannot maintain a valid cause of action against Madison County for money had and received. Accordingly, we conclude that the circuit court abused its discretion in granting class certification as to the sale in error and money had and received claims against Madison County.

¶ 54    In summary, we conclude that, whereas a class certified for liability purposes would not be an abuse of the circuit court's discretion, a class certified for liability as well as damages would be, as the individualized damage determinations will predominate over the common issues of establishing liability. Thus, the class certification remains as to liability, but we partially decertify the class for the individual damages determination in light of the need for individualized proof. In addition, the court abused its discretion in certifying a class that included the sale in error claim against Madison County and Prenzler and money had and received claim against Madison County. Accordingly, we vacate the court's certification order as it applies to the sale in error claim alleged against Madison County as well as Prenzler and the money had and received claim alleged against Madison County, as these claims should be dismissed. The cause is remanded to the circuit court for further proceedings in accordance with the views expressed.

29

¶ 55    Affirmed in part; vacated in part; and remanded.

2016 IL App (5th) 150282
NO. 5-15-0282
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| | | |
|---|---|---|
| SCOTT BUEKER, VIRGIL STRAETER, and RICHESON REAL ESTATE, LLC, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Respondents, | ) ) | |
| v. | ) ) | No. 13-L-276 |
| MADISON COUNTY, ILLINOIS; FRED BATHON; KURT PRENZLER, in His Official Capacity as Madison County Treasurer; JIM FOLEY; ALAN J. DUNSTAN; MARK VON NIDA; BARRETT ROCHMAN; KENNETH ROCHMAN; BLUE SKY VINEYARDS, LLC; CDBR, LLC; SABRE GROUP, LLC; SI SECURITIES, LLC; DENNIS BALLINGER, JR.; EMPIRE TAX CORPORATION; VISTA SECURITIES, INC.; JOHN VASSEN; JOSEPH VASSEN; V.I. INC.; SCOTT McLEAN; LAND OF LINCOLN SECURITIES, LLC; PRAIRIE STATE SECURITIES, LLC; ROBERT LUKEN; LUKEN INVESTMENT CO.; SCOTT SIERON; RAVEN SECURITIES, INC.; ILLINOIS MOBILE HOMES, LLC; ILLINOIS REALTY GROUP HOLDINGS, LLC; ILLINOIS REALTY GROUP, LLC; JOHN W. SCOTT; EDWARD BEASLEY; RLI INSURANCE CO.; and WESTERN SURETY COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Madison County, Illinois; Jim Foley; Barrett Rochman; Kenneth Rochman; Blue Sky Vineyards, LLC; CDBR, LLC; Sabre Group, LLC; SI Securities, LLC; Dennis Ballinger, Jr.; Empire Tax Corporation; Vista Securities, Inc.; John Vassen; Joseph Vassen; V.I. Inc.; Scott Sieron; Raven Securities, Inc.; Illinois Mobile Homes, LLC; Illinois Realty Group Holdings, LLC; and Illinois Realty Group, LLC, Defendants-Petitioners). | ) ) ) ) ) ) ) ) ) ) ) ) | Honorable William J. Becker, Judge, presiding. |

_____

**Opinion Filed:** September 7, 2016

_____

**Justices:** Honorable Thomas M. Welch, J.
Honorable S. Gene Schwarm,  P.J., and
Honorable Melissa A. Chapman, J.,
Concur

_____

**Attorneys for Appellants**

Andrew R. Kasnetz, Timothy C. Sansone, Natalie J. Kussart, Michele L. Parrish, Sandberg, Phoenix & von Gontard, P.C., 600 Washington Avenue, 15th Floor, St. Louis, MO 63101-1313 (attorneys for Blue Sky Vineyards, LLC, CDBR, LLC, Barrett Rochman, Kenneth Rochman, Sabre Group, LLC, SI Securities, LLC);

Gordon B. Nash, Daniel J. Delaney, Drinker Biddle & Reath LLP, 191 North Wacker Drive, Suite 1698, Chicago, IL 60606 (attorneys for Dennis Ballinger, Jr., Empire Tax Corporation, Vista Securities, Inc.);

Paul T. Slocomb, Hoffman & Slocomb, 1115 Locust Street, Suite 400, St. Louis, MO 63101 (attorneys for V.I. Inc., John Vassen, Joseph Vassen);

Alvin C. Paulson, Attorney at Law, 5111 West Main Street, Belleville, IL 62226 (attorneys for Illinois Mobile Homes, LLC, Illinois Realty Group Holdings, LLC, Illinois Realty Group, LLC, Raven Securities, Inc., Scott Sieron);

Craig  L. Unrath, Heyl, Royster, Voelker & Allen, 300 Hamilton Blvd., P.O. Box 6199, Peoria, IL 61601-6199; Michael D. Schag, Patrick D. Cloud, Ann C. Barron, Heyl, Royster, Voelker & Allen, 105 West Vandalia, Suite 100, P.O. Box 467, Edwardsville, IL 62025 (attorneys for James Foley, Madison County, Illinois)

_____

**Attorneys for Appellees**

Steven C. Giacoletto, Giacoletto Law Office, P.C., 30 Summer Tree Lane, Collinsville, IL 62234; Aaron G. Weishaar, Boris A. Kaupp, Reinert, Weishaar & Associates, P.C., 812 North Collins, Laclede's Landing, St. Louis, MO 63102; Nelson L. Mitten, Paul A. Grote, Riezman Berger P.C., 7700 Bonhomme Avenue, Seventh Floor, St. Louis, MO 63105 (attorneys for Scott Bueker, Richeson Real Estate, LLC, Virgil Straeter)

_____