NOTICE

Decision filed 09/06/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 180033

NO. 5-18-0033

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| HENRY LEE, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-L-604 |
| BUTH-NA-BODHAIGE, INC., a Delaware Corporation, d/b/a The Body Shop, and DOES 1-10, | ) ) ) ) ) | |
| Defendants-Appellees | ) ) | Honorable Vincent J. Lopinot, |
| (Jenna Dickenson, Objector-Appellant). | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Moore and Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1      Objector, Jenna Dickenson, appeals from a judgment granting "Final Approval of a Settlement Agreement" in a class action lawsuit brought by plaintiff, Henry Lee, against defendant, Buth-Na-Bodhaige, Inc., d/b/a The Body Shop (The Body Shop), for alleged willful violations of the federal Fair and Accurate Credit Transactions Act of 2003 (FACTA) (15 U.S.C. § 1681c(g)(1) (2012)). Dickenson challenges, among other things, the ability of Lee to adequately represent the settlement class, the adequacy of the notice to members of the settlement class, and the fairness, reasonableness, and adequacy of the "coupon settlement." For reasons that follow, we vacate the judgment and remand this case for further proceedings consistent with this opinion.

1

¶ 2                              I. BACKGROUND

¶ 3                  A. The Fair and Accurate Credit Transactions Act

¶ 4    Lee filed a putative class action suit against defendant, The Body Shop, to recover statutory damages for alleged willful noncompliance with FACTA. Passed in 2003, FACTA amended the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 (2012)). The FCRA was enacted for the purposes of ensuring fair and accurate credit reporting, promoting efficiency in the banking system, and protecting consumer privacy. See 15 U.S.C. § 1681 (2012). The FACTA amendments were intended to thwart identity theft and credit and debit card fraud. See 15 U.S.C. § 1681c(g) (2012). Section 1681c(g)(1) of Title 15 provides:

"Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1) (2012).

¶ 5    Persons engaged in either willful or negligent noncompliance with FACTA's requirements are subject to civil liability. See 15 U.S.C. §§ 1681n, 1681o (2012). In a case of willful noncompliance, a merchant is liable to the affected consumer for actual damages resulting from the violation or statutory damages ranging from $100 to $1000. 15 U.S.C. § 1681n(a)(1)(A) (2012). A willful violator may also be liable for punitive damages as allowed by the court, costs of the action, and reasonable attorney fees as determined by the court. 15 U.S.C. § 1681n(a)(2), (3) (2012). In the case of negligent noncompliance, a merchant is liable to the consumer for actual damages, as well as costs of the action and reasonable attorney fees as determined by the court. 15 U.S.C. § 1681o (2012).

¶ 6    The foregoing penalties for willful violations of FACTA are the result of a 2008 amendment that modified the definition of willful noncompliance. See Credit and Debit Card

Receipt Clarification Act of 2007 (Clarification Act) (15 U.S.C. § 1681n(d) (2012)). The legislation was enacted in response to a waterfall of lawsuits alleging a willful violation of FACTA under circumstances where a cardholder's account number was properly truncated, but the expiration date was displayed on the printed receipt. See Clarification Act, Pub. L. No. 110-241, § 2, 122 Stat. 1565. Under section 1681n(d) of Title 15, any person who printed an expiration date on any receipt provided to a cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with section 1681c(g), would not be held in willful noncompliance by reason of printing the expiration date on the receipt. 15 U.S.C. § 1681n(d).

¶ 7                                    B. The Federal Court Action

¶ 8    On December 7, 2015, Lee used his American Express credit card to make a purchase at one of defendant's retail stores located on Lexington Avenue in New York, New York. The purchase amount was $19.60. Upon completion of the purchase, Lee received a computer-generated sales receipt. The receipt contained the first six and last four digits of Lee's 16-digit credit card account number.

¶ 9    On February 12, 2016, Lee filed a putative class action complaint in the United States District Court for the Southern District of New York (Federal Court Action) and alleged that The Body Shop failed to truncate credit card and debit card account numbers on electronically printed receipts in willful violation of FACTA. *Lee v. Buth-Na-Bodhaige*, *Inc.*, No. 1:16-cv-01104-LTS, 2017 WL 2693795 (S.D.N.Y. Jan. 24, 2017) (verdict and settlement summary).

¶ 10   In January 2017, the parties reached a tentative settlement that covered a nationwide class of plaintiffs. In March 2017, the federal court in New York granted an "Order of Preliminary Approval of the Settlement" (Federal Approval Order). Subsequent to the issuance of notice, five objectors challenged the Federal Approval Order. In response to certain challenges raised by the objectors, including Dickenson, the federal court issued orders in August and September 2017,

3

directing Lee to show cause why the Federal Court Action should not be dismissed for lack of standing under article III of the United States Constitution for failure to plead a "concrete" injury resulting from the alleged FACTA violation. On October 16, 2017, Lee requested that the federal court voluntarily dismiss the Federal Court Action, without prejudice. On October 18, 2017, the Federal Court Action was dismissed, without prejudice. *Lee v. Buth-Na-Bodhaige, Inc.*, No. 1:16-cv-01104-LTS (S.D.N.Y. Oct. 18, 2017), https://ecf.nysd.uscourts.gov/doc1/127121191611 [https://perma.cc/U4TR-WKHV].

¶ 11                                  C. The St. Clair County Action

¶ 12    On October 17, 2017, just one day after requesting dismissal of the Federal Court Action, Lee filed a putative class action complaint against The Body Shop in the circuit court of St. Clair County, Illinois. The allegations in the St. Clair County complaint were essentially identical to those made in the Federal Court Action. In the St. Clair County complaint, Lee alleged that The Body Shop operated hundreds of stores throughout the United States, including four retail locations in Illinois; that defendant's stores accepted credit cards and debit cards for the transaction of its business within the meaning of FACTA; that FACTA was enacted by Congress to curb identity theft; and that merchants such as The Body Shop were given three years to comply with the requirements of the federal statute. Lee further alleged that he had used his American Express card to make a purchase at one of defendant's stores located on Lexington Avenue in New York City, New York, and that, upon completion of the purchase, the Body Shop provided him with an electronic sales receipt containing the first 6 digits and the last 4 digits of his credit card number, for a total of 10 digits.

¶ 13    Lee asserted that The Body Shop's failure to truncate the credit card account number on his receipt was a willful violation of the requirements set forth in FACTA. He averred, upon information and belief, that The Body Shop had failed to comply with FACTA's truncation

4

requirements at other retail locations throughout the relevant class period, and that The Body Shop continued to act in willful disregard of FACTA's requirements. Lee claimed that The Body Shop either recklessly failed to review its own compliance with FACTA or intentionally opted to save money by not bringing its stores into compliance with FACTA. On behalf of himself and all others similarly situated, Lee sought statutory damages, punitive damages, attorney fees and costs, and prejudgment and postjudgment interest. Lee did not seek actual damages on behalf of himself or any members of the putative class.

¶ 14 The proposed class identified in the St. Clair County complaint[1] was exactly the same as that proposed in the Federal Court Action:

> "All persons who used either a Visa, MasterCard, or Discover debit or credit card, and/or American Express credit card at any of Defendant's locations where Defendant provided an electronically-printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card or more than the last five digits of that person's credit or debit card for a time period beginning five years prior to the filing of this lawsuit until the date the class is certified."

According to the complaint, at least 7282 residents of Illinois, including 44 residents of St. Clair County, were members of the putative class, although Lee did not name a putative class member from St. Clair County, or Illinois, generally.

---

[1]Plaintiff's complaint alleged that the cause of action was being brought on behalf of a class pursuant to Rule 23(a) and (b)(3) of Federal Rues of Civil Procedure (Fed. R. Civ. P. 23(a), (b)(3)). For purposes of this appeal, we note that the Illinois class action statute (735 ILCS 5/2-801 *et seq.* (West 2016)) is patterned after an earlier version of Rule 23 of the Federal Rules of Civil Procedure. Because of this relationship, "federal decisions interpreting Rule 23s are persuasive authority with regard to the question of class certification in Illinois." *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 448 (2006); *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 125 (2005).

¶ 15                    D. Motion for Preliminary Approval

¶ 16    On October 18, 2017, one day after filing his state court complaint, Lee filed "Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement Agreement" (Plaintiff's Unopposed Motion), pursuant to section 2-801 of the Code of Civil Procedure (Code) (735 ILCS 5/2-801 *et seq.* (West 2016)). Lee requested that the circuit court grant preliminary approval of the class action settlement agreement (Settlement Agreement), issue an order of conditional certification of a class for settlement purposes, appoint Lee as the class representative and Lee's counsel as class counsel, and grant approval of the notice to the class. Lee indicated that The Body Shop did not oppose the Plaintiff's Unopposed Motion, provided the motion was for settlement only.

¶ 17    In a lengthy introduction to Plaintiff's Unopposed Motion, Lee explained the purpose of FACTA and set forth the language of the statute for the court. Lee further indicated that on February 12, 2016, he had originally filed a class action complaint against The Body Shop in the United States District Court for the Southern District of New York. Lee then offered his account of the work that had been done in the Federal Court Action. According to Lee's account, the parties had engaged in extensive discovery, and he and his counsel had engaged in mediation of the dispute at the request of the federal court in New York. He maintained that the parties had spent six months negotiating a settlement with the assistance of a nationally-known mediator, during which time they engaged in additional discovery related to the settlement, discussed the strengths of the claims and the defenses, and considered the applicable case law and its potential impact on each party's position. As a result of that mediation, Lee and his counsel received discovery that revealed the total number of transactions at The Body Shop's stores from April 23, 2014, through January 9, 2016. The Body Shop also disclosed the number of stores potentially involved in FACTA violations and the reason for its failure to truncate the credit card or debit card numbers

6

as required by FACTA. Lee indicated that through the efforts between opposing counsel, the parties had agreed to a tentative settlement. Lee attached a copy of the Settlement Agreement, marked as Exhibit 2, along with other exhibits in support of Plaintiff's Unopposed Motion. Notably, Lee did not attach any of the discovery documents, materials, or data supporting his contentions regarding the extensive discovery. He did not provide any statements from the mediator, progress reports, or other documentation or evidence regarding the mediation process.

¶ 18                                E. The Settlement Agreement

¶ 19    The Settlement Agreement attached to Plaintiff's Unopposed Motion was the same Settlement Agreement that had been preliminarily approved in the Federal Court Action. The Settlement Agreement contained a remedial injunctive provision that required The Body Shop to comply with the FACTA requirements at all of its stores throughout the United States. Additionally, each member of the settlement class was entitled to receive a $12 gift card (Settlement Benefit).[2] The Settlement Benefit could be used for any purchase at one of defendant's stores, or online. The gift card, however, had to be activated within six months of being received, or the Settlement Benefit expired. Once activated, the $12 gift card had no expiration date. In his pleadings, Lee informed the court that The Body Shop had indicated that the average purchase at one of their retail locations was $8. Therefore, with a $12 gift card, a settlement class member, on average, could purchase an item at one of defendant's stores without spending any additional money out-of-pocket.

¶ 20    The proposed Settlement Agreement was the same in both the Federal Court Action and the St. Clair County circuit court. The putative class identified in the Settlement Agreement was significantly different than the proposed class definition set forth in plaintiff's federal and state

_____

[2]The Settlement Benefit did not equal the value of plaintiff's purchase in the amount of $19.60 at the store in New York City.

complaints. The Settlement Agreement amended plaintiff's original class definition as follows:

> "All persons who used either a debit or credit card at any of The Body Shop's retail locations in the United States where an electronically-printed receipt was received at POS or in a transaction that displayed more than the last five digits of that person's debit or credit card number during the period beginning February 12, 2011, to the date the class is certified for settlement purposes. *Notwithstanding the foregoing, all persons who are or have been enrolled in The Body Shop's 'Love Your Body™ Loyalty Program' for whom The Body Shop has an e-mail or physical address, and who made a debit or credit card transaction at any of The Body Shop's retail locations in the United States between April 23, 2014 and January 9, 2016, shall be included in the Settlement Class and hereinafter referred to as the 'Direct Notice Settlement Class Members.'* "

¶ 21    The Settlement Agreement thus provided that each member of The Body Shop's "Love Your Body™ Loyalty Program" (Loyalty Program Members) who had provided an active e-mail address or physical address, and who had made a transaction between April 23, 2014, and January 9, 2016, would be included in the settlement class and would receive direct notice of the settlement. In fact, these Loyalty Program Members were specially designated as the "Direct Notice Settlement Class Members."

¶ 22    Under the terms of the settlement, the Loyalty Program Members were not required to submit a claim form in order to receive the $12 gift card. Settlement class members who were unknown to the defendant would receive notice through publication in a national newspaper and a dedicated website created by the settlement administrator. The unknown settlement class members were required to submit a claim form attesting to their membership in the settlement class but would not need to produce a receipt. The settlement administrator was responsible for verifying the validity of the claim submitted by the putative member of the settlement class.

8

¶ 23    The Settlement Agreement also included an "opt-out" provision. Under this provision, any settlement class member who wanted to be excluded from the settlement was required to mail a clear written request for exclusion to the settlement administrator within 10 days of the "opt-out date." The "opt-out date" was declared to be 45 days from the initial notice. Those settlement class members who opted-out were not eligible for the Settlement Benefit.

¶ 24    In further support of Plaintiff's Unopposed Motion, Lee asserted that the judge in the Federal Court Action had reviewed the Settlement and had ordered revisions to the initially proposed method for providing notice to potential settlement class members. Lee further asserted that the federal judge had required the parties to revise the language of the release originally incorporated in the Settlement Agreement, and required changes to the form of direct notice, the publication notice, and the proposed Federal Approval Order. Lee indicated that all of the modifications ordered by the federal court were adopted. In support of these assertions, Lee attached the Federal Approval Order entered on March 21, 2017, along with the notices, claim forms, and opt-out forms previously approved by the federal court.

¶ 25    The March 21, 2017, Federal Approval Order attached to Plaintiff's Unopposed Motion provided the St. Clair County circuit court with an order that granted preliminary approval of the terms set forth in the Settlement Agreement[3]; preliminarily certified the settlement class; appointed Lee as class representative; and appointed plaintiff's counsel as class counsel. The Federal Approval Order also directed that notice be given to settlement class members as specified in the amended Settlement Agreement. There is, however, nothing in the record indicating that Lee provided the circuit court with a transcript of the federal preliminary approval hearings or

---

[3]The class definition was amended in the Federal Court Action to add the direct notice settlement class members. The record is devoid of any indication which explains why the loyalty program settlement class members were added.

9

bystander's report memorializing what had occurred during the preliminary approval proceedings in the Federal Court Action. Thus, the circuit court was without a meaningful record of the presentation made by the parties to the federal court, and any concerns voiced by the federal court with respect to the Settlement Agreement.

¶ 26    In further support of his request for preliminary approval, Lee attached a declaration from the settlement administrator, Nancy Baker, that had been filed in the Federal Court Action. Through this declaration, dated July 21, 2017, Lee shed some light on what had transpired since the entry of the March 21, 2017, Federal Approval Order. Therein, Baker stated that The Body Shop had provided mail and e-mail addresses for 392,000 customers, that some of the addresses were no longer valid, that direct notice was provided to 349,640 settlement class members, and that two separate notices had appeared by publication in the newspaper USA Today. Baker further stated that a dedicated website had been established with a telephone line available to respond to questions regarding the settlement. According to Baker's declaration, the website also contained information regarding the settlement, such as deadlines, the long form notice, the claim form, and an opt-out form. Baker reported that the website had been visited over 46,000 times, and that 20,438 claims had been filed as of July 21, 2017. Of those claims filed, 14,714 were found to be valid. Baker also reported that she had received 29 opt-out requests.

¶ 27    In Plaintiff's Unopposed Motion, Lee claimed that The Body Shop had estimated there were 3,656,931 credit and debit card transactions between April 23, 2014, and January 9, 2016.[4] The notice process had cost nearly $200,000 to implement. Lee further averred that only five settlement class members had filed objections to the settlement in the Federal Court Action. Lee did not, however, attach any of those objections to his pleadings in the St. Clair County action.

_____

[4]This date range for the reported credit and debit card transactions was identical to the class period for the Loyalty Program Members.

10

F. Requirements Under the Illinois Class Action Statute

¶ 29    In Plaintiff's Unopposed Motion, Lee next argued that the requirements for certifying a class pursuant to section 2-801 of the Code (735 ILCS 5/2-801 (West 2016)) had been satisfied and that the circuit court should grant class certification. Specifically, Lee claimed that the numerosity requirement had been met, as there were over 300,000 settlement class members, and therefore, the class was so numerous that joinder of all settlement class members was impracticable. Lee further asserted that the commonality requirement was satisfied, as there were questions of fact and law that predominated over any questions affecting individual class members. In support of this argument, Lee focused on the defendant's conduct in violating FACTA, as well as the receipts received by thousands of settlement class members containing more than the last five digits of their credit or debit cards. Further, for settlement purposes, Lee claimed that a judgment in favor of the settlement class members "would decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim," thus satisfying the predominance inquiry. Lee also argued that his claim was typical of the claims of other settlement class members and claimed that "Plaintiff seeks exactly the same statutory damages that each member of the class would likewise seek."[5] Lee's arguments in support of "typicality" were repetitive of prior arguments and need not be repeated here.

¶ 30    In addressing the requirement of section 2-801(3) of the Code, Lee asserted that he, as class representative, would fairly and adequately protect the interests of the settlement class. Lee further asserted that his claim was "identical with other members of the Class." Therefore, he had no conflict of interest. Lee indicated that he had made himself available throughout the entire

---

[5]The issue of "typicality" is not one of the factors identified in the Code governing class actions. Our supreme court, however, has indicated that the "purpose of the predominance requirement is to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation, and it is a far more demanding requirement than the commonality requirement of Rule 23(a)(2)." *Smith*, 223 Ill. 2d at 448.

litigation, including responding to discovery, engaging with his counsel, and participating in the mediation process. Lee also asserted that his attorneys were well-qualified to represent the settlement class and their class interests, noting his attorneys had experience with class action cases, generally, and, with FACTA litigation in particular. Lee requested that he be appointed as the class representative, and that his attorneys be appointed as class counsel.

¶ 31　With regard to the final requirement of section 2-801(4), Lee pointed out that while Federal Rule of Civil Procedure 23(b)(3) requires that a class action be superior to other available methods of adjudication, the Illinois statute required that the trial court find that the class action is an appropriate method of litigating the controversy. Lee claimed that a class action settlement was an "appropriate" method for concluding this litigation, as the settlement could best secure the economies of time, effort and expense, and promote a uniformity of decision, and could accomplish the equity and justice that class actions seek to obtain. In support of his argument, Lee reiterated many of his prior arguments and concluded that where the first three requirements of the Illinois statute are satisfied, it is evident that the "appropriateness" requirement is fulfilled.

¶ 32　With regard to the issue of the notice previously sent to members of the settlement class, Lee suggested that even though the judicial forum had changed, the terms of the Settlement Agreement submitted for approval in the state court were identical to those terms approved in the Federal Court Action. Therefore, the notice that had already been issued contained the terms of the Settlement Agreement and had already been sent to the direct notice settlement class members. Lee further indicated that the notice had been published twice in USA Today, and that copies of all forms of the notice were available on the dedicated website. Lee argued that sending another notice to the settlement class would be a significant and unnecessary expense. Given the fact that only five settlement class members had filed objections after notice had been sent in the Federal Court Action, Lee proposed that the dedicated website maintained by the settlement administrator

be used to notify the settlement class that the federal case had been dismissed and the lawsuit refiled in St. Clair County, Illinois. Additionally, Lee proposed that the settlement class members be notified of Plaintiff's Unopposed Motion for approval of the settlement by posting information on the website, which could be updated to add any relevant documents and hearing dates, or deadlines set in the St. Clair County action. Lee further suggested that the five class members who had submitted objections in the Federal Court Action should be notified, by certified mail, of the filing of Plaintiff's Unopposed Motion in the state court and that the objectors should be provided with the date of the final approval hearing. Finally, Lee indicated that plaintiff's counsel would provide the circuit court with a copy of the five objections submitted in the Federal Court Action and a list of the 29 individuals who had chosen to opt out of the settlement.

¶ 33    On October 30, 2017, Lee notified The Body Shop that Plaintiff's Unopposed Motion would be called for hearing on November 7, 2017. There is no indication that the settlement class members and the objectors were given any notice of the date of the preliminary approval hearing.

¶ 34                    G. The Class Settlement Approval Proceedings

¶ 35    On November 7, 2017, the circuit court entered an order granting "Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement" (Preliminary Approval Order). In its order, the court granted preliminary approval of the class settlement, finding that for purposes of preliminary approval, the terms of the Settlement Agreement appeared to be fair, reasonable, and adequate, and within the range of reasonableness for a class settlement. In light of these findings, the circuit court conditionally certified a class for settlement purposes only. The settlement class was defined as:

"All persons who used a debit or credit card at any of The Body Shop's retail locations in the United States where an electronically-printed receipt was received at POS or in a transaction that displayed more than the last five digits of that person's debit or credit card

13

number during the period beginning February 12, 2011, to date the class is certified for settlement purposes. Notwithstanding the foregoing, all persons who are or have been enrolled in The Body Shop's 'Love Your Body™ Loyalty Program' for whom The Body Shop has an e-mail or physical address, and who made a debit or credit card transaction at any of The Body Shop's retail locations in the United States between April 23, 2014 and January 9, 2016, shall be included in the Settlement Class and hereinafter referred to as the 'Direct Notice Settlement Class Members.' "

¶ 36    The circuit court also appointed Lee as the class representative, and plaintiff's attorneys were appointed as class counsel. The court determined that "adequate notice has been previously given to the Settlement Class" during the pendency of the matter in the Federal Court Action in "the form of Direct Notice, Publication Notice, and Website Notice" for purposes of section 2-803 (735 ILCS 5/2-803 (West 2016)). The circuit court "adopt[ed] that notice process herein as though ordered by this Court." The court found the requirements of section 2-803 had been met, subject to the following:

"(a) The Court Orders that the class action website previously established be updated to reflect that the class action settlement has been re-filed before this Court. That website shall include a copy of the Complaint filed in this action, as well as a copy of this Order, and the Settlement Agreement.

(b) In addition, the Court Orders Counsel for Plaintiff, within ten (10) days of the date of this order, to provide notice, by certified mail, return-receipt requested, to any Settlement Class Member or that Settlement Class Member's counsel, who has entered an appearance or otherwise submitted an objection in the Federal Court Action, of the existence of this lawsuit and of the Final Approval Hearing.

14

(c) The Administrator will file with the Court and serve upon Class Counsel and Settling Defendant's counsel, no later than ten (10) days prior to the Final Approval Hearing, an affidavit or declaration stating that the dedicated settlement website has been created in accordance with the terms of this Preliminary Approval Order."

The court determined that the above procedures were the "best notice practicable under the circumstances," that they constituted due and sufficient notice to all persons entitled to notice, and that no other notice was necessary.

¶ 37    Under the Preliminary Approval Order, all opt-out requests submitted during the Federal Court Action were honored, and the settlement administrator was directed to notify the circuit court of the opt-out requests within 10 days prior to the final approval hearing. In addition, any objections filed in the Federal Court Action would be deemed objections in the state court action, and any settlement class member who failed to make an objection through the process established in the Federal Court Action "shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the Settlement." The court scheduled the final approval hearing for December 5, 2017, and directed class counsel to submit any papers in support of the settlement and their application for attorney fees and costs by November 22, 2017.

¶ 38    In the November 7 order, the circuit court stated it had read and considered the Settlement Agreement and the papers filed in support of Plaintiff's Unopposed Motion for preliminary approval of the settlement. The order does not indicate that the court received any testimony or additional evidence during the preliminary approval hearing on November 7, 2017, and there is no transcript of the hearing in the record on appeal.

¶ 39                        H. Petition for Attorney Fees and Incentive Fee

¶ 40    On November 22, 2017, Lee filed "Plaintiff's Unopposed Motion for Approval of Attorney's Fees and Expenses and Class Representative Incentive Fee" (Plaintiff's Fee Motion).

15

In Plaintiff's Fee Motion, Lee argued that as the class representative, he should be awarded a $4000 incentive fee for his efforts in initiating the class action, expending time and energy assisting class counsel, regularly communicating with class counsel, and assuming the risks involved. He argued that incentive fees were common in class actions, and that the sum of $4000 was reasonable in this case.

¶ 41    In Plaintiff's Fee Motion, Lee also asserted that class counsel had created a substantial value to the settlement class of at least 364,354 members. Lee argued that the total Settlement Benefit could reach $4,372,248 and that the gift cards had additional value because they would not expire, were transferrable, and could be used in conjunction with other offers and discounts at defendant's stores. Lee further asserted that class counsel had provided the additional benefit of injunctive relief for consumers nationwide. Therefore, Lee argued that an award of $500,000 for attorney fees and costs was fair and reasonable.

¶ 42    As additional support for Plaintiff's Fee Motion, Lee reiterated the various terms of the settlement, including the notice provisions, the lack of significant objections or opt-outs, and his view that the case law in Illinois relative to the creation of "common fund" benefits in class actions, as well as the "lodestar" analysis, justified the attorney fees requested. Lee also represented that The Body Shop had agreed to pay up to $4000 as an incentive fee to the class representative and would not oppose attorney fees up to $500,000. Lee claimed that the agreement to pay any incentive fee and attorney fees was reached only after the settlement amount had been negotiated. He also claimed that there was no collusion in reaching the settlement, the plaintiff had actively litigated the action, and the defendant had vigorously defended the action. Lee further argued that assuming complete use of the gift cards, the total settlement benefit would be $4,372,248 and that the attorney fee award of $500,000 would amount to 11% of the total Settlement Benefit conferred on the settlement class.

16

¶ 43    Affidavits of class counsel were filed in support of Plaintiff's Fee Motion. In one affidavit, class counsel stated his firm had incurred $207,560.50 in legal fees and $13,018.30 in expenses. In the second affidavit cocounsel stated that his firm had incurred $164,270 in legal fees and $1161.31 in expenses through November 20, 2017. Class counsel indicated they would submit true and accurate copies of their billing statements for an *in camera* review at the final approval hearing. Notably, on November 22, 2017, when Plaintiff's Fee Motion was filed, the time for objecting to the settlement had long since expired in the Federal Court Action. In its preliminary approval order, the circuit court did not extend the deadline for settlement class members to object to Plaintiff's Fee Motion.

¶ 44                    I. Objector Dickenson's Submission

¶ 45    On December 1, 2017, Jenna Dickenson, a settlement class member, filed her "Objection of Class Member Jenna Dickenson." Dickenson initially objected to Lee's appointment as the class representative, noting that Lee "fled the federal court" because he suffered no "concrete" injury and therefore had no standing under article III of the United States Constitution. She also argued that Lee should not be able to compromise the claims of all settlement class members, where some members may have incurred actual damages as a result of identity theft or fraud. Dickenson also objected to the composition of the settlement class. She noted that all members of defendant's "loyalty program" had been automatically included in the settlement class, without regard to whether they received printed receipts in violation of FACTA, and that only 14,714 other persons submitted valid claim forms after notice by publication. She argued that the addition of 350,000 Loyalty Program Members, who may or may not have received a receipt in violation of FACTA, were added in order to inflate the size of the settlement class. Dickenson also challenged the adequacy of the notice on due process grounds, arguing that notice in the Federal Court Action was not a substitute for notice of the proceedings in a circuit court in Illinois. She also questioned

17

the adequacy of the initial notice by publication, pointing out that only 17,000 people nationwide had submitted claim forms in response to the two notices published in USA Today, a newspaper with a one or two percent nationwide subscription rate. Finally, Dickenson objected to the settlement as a "coupon" settlement, claiming that the factors set forth in *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 972 (1990), had not been satisfied.

¶ 46   In support of her objections, Dickenson attached a copy of the objections and supporting brief she had filed in the Federal Court Action. She also attached the orders issued by the federal district court, directing Lee to show cause why the Federal Court Action should not be dismissed for lack of article III standing, and class counsel's letter, dated October 16, 2017, seeking a voluntary dismissal of the Federal Court Action.

¶ 47                               J. Final Approval Hearing

¶ 48   The final approval hearing before the St. Clair County circuit court was rescheduled for December 20, 2017. Class counsel, defendant's counsel, and counsel for objector appeared at the final approval hearing. According to the 18-page transcript of proceedings, the hearing was brief. No evidence was offered. Class counsel and defendant's counsel made brief arguments in support of the Settlement Agreement. Dickenson's counsel addressed the court and began by recounting the arguments made in the objector's written submission. He challenged the fairness, reasonableness, and adequacy of the "coupon settlement." During the argument by Dickenson's counsel, the trial court asked how Dickenson would be harmed by final approval of the settlement. Dickenson's counsel responded that under the terms of the settlement, The Body Shop was released from liability for any claims for actual damages should any settlement class member suffer identity theft or fraud in the future. Dickenson's counsel suggested that a different Release would protect the settlement class. Dickenson's counsel also argued that the settlement class members were injured because this was a "reverse auction" settlement. He asserted that The Body Shop was

18

defending against two other class actions involving identical alleged FACTA violations and that The Body Shop chose to negotiate a smaller settlement in the St. Clair County case because class counsel were less skilled and experienced, and defendant hoped the circuit court would approve a weak settlement, thereby precluding the other actions. After permitting a brief rebuttal, the trial court stated that it had "heard enough" and was going to "make the final approval, authorize the disbursement and authorize the attorneys' fees herein."

¶ 49    On December 20, 2017, the circuit court entered the "Order Granting Final Approval of Class Settlement Agreement and Issuance of Final Judgment and Order of Dismissal" (Order of Final Approval). The court made no changes to the terms of the settlement in response to the arguments advanced by objector Dickenson. Dickenson filed a timely notice of appeal.

¶ 50                                    II. ANALYSIS

¶ 51    Before addressing the substantive arguments raised by the parties to this appeal, we note that counsel for The Body Shop filed a supplemental appendix containing a number of documents and materials that do not appear in the record on appeal and that counsel referenced and relied upon those documents in the appellee's brief. It is well settled that matters not properly part of the record and not considered by the trial court will not be considered on review. *Garvy v. Seyfarth Shaw LLP*, 2012 IL App (1st) 110115, ¶ 26. Likewise, where arguments in a brief rely upon documents not properly part of the record on appeal, the reviewing court will disregard the arguments. *Garvy*, 2012 IL App (1st) 110115, ¶ 26. Accordingly, we have not considered those materials in the supplemental appendix and the arguments made in reliance on them in the disposition of this appeal.

¶ 52                    A. Judicial Scrutiny of Class Action Settlements

¶ 53    Certification of a class action in Illinois is governed by section 2-801 of the Code (735 ILCS 5/2-801 (West 2016)). Section 2-801 identifies the four prerequisites for maintaining a class

19

action: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members, (3) the representative parties will fairly and adequately protect the interests of the class, and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (West 2016). The party seeking class certification has the burden to establish the four prerequisites. *Bueker v. Madison County*, 2016 IL App (5th) 150282, ¶ 23. In deciding whether to certify a class, the trial court may consider any matters of fact or law properly presented by the record, including the pleadings, depositions, affidavits, answers to interrogatories, and any evidence that may have been adduced at the hearings. *Bueker*, 2016 IL App (5th) 150282, ¶ 22.[6] The decision regarding class certification falls within the discretion of the circuit court, but the court's discretion is not unlimited as it must be exercised within the framework of the rules of procedure governing class actions. *Bueker*, 2016 IL App (5th) 150282, ¶ 22.

¶ 54    Under our statute, a class action suit shall not be compromised or dismissed "except with the approval of the court and, unless excused for good cause shown, upon notice as the court may direct." 735 ILCS 5/2-806 (West 2016). The proponents of a class settlement must show that the compromise is fair, reasonable, and in the best interest of all who will be affected by it, including absent class members. See *Waters v. City of Chicago*, 95 Ill. App. 3d 919, 924 (1981). In a class action, the trial court is the guardian of the interests of the absent class members. *Steinberg v. System Software Associates, Inc.*, 306 Ill. App. 3d 157, 169 (1999); *Waters*, 95 Ill. App. 3d at 924.

---

[6]As noted previously, the Illinois class action statute (735 ILCS 5/2-801 *et seq.* (West 2016)) was patterned after Rule 23 of the Federal Rules of Civil Procedure. Therefore, to the extent federal decisions related to the interpretation of Rule 23 are persuasive, we have considered the reasoning of our federal colleagues with regard to the issues raised herein. See *Smith*, 223 Ill. 2d at 447-48; *Avery*, 216 Ill. 2d at 125.

¶ 55    In Illinois, a circuit court's order granting final approval of a class action settlement is reviewed for an abuse of discretion. *People ex rel. Wilcox v. Equity Funding Life Insurance Co.*, 61 Ill. 2d 303, 316 (1975); *Quick v. Shell Oil Co.*, 404 Ill. App. 3d 277, 281-82 (2010). Generally, a trial court abuses its discretion when a ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. *Quick*, 404 Ill. App. 3d at 282.

¶ 56    Class action settlements are reviewed on a case-by-case basis, with consideration of several factors, including the strength of plaintiffs' case balanced against the money and relief offered in the settlement; the defendant's ability to pay; the complexity, length, and expense of further litigation; the amount of opposition to the settlement; the presence of collusion in reaching the settlement; the class members' reaction to the settlement; the opinion of competent counsel; and the stage of proceedings and amount of discovery completed. See *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *Korshak*, 206 Ill. App. 3d at 972. In considering these factors, the circuit court should not turn the approval hearing into a trial on the merits. *Wilcox*, 61 Ill. 2d at 316. That said, the decision of the circuit court is also affected depending on whether the parties are requesting certification of a class for settlement purposes only (a "settlement only" class). When faced with a settlement only class, a court asked to approve the settlement should not assume the passive role that is appropriate when there is genuine adverseness between the parties. *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). Indeed, in order to protect the absent members of the class, the trial judge must "demand undiluted, even heightened, attention in the settlement context." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Products*, 521 U.S. at 620.

¶ 57    The heightened scrutiny required for review of a settlement only class requires the circuit

court to apprise itself of all facts necessary to reach

> " 'an intelligent and objective opinion of the probabilities of ultimate success should the
> claim be litigated' and to 'form an educated estimate of the complexity, expense, and likely
> duration of such litigation *** and all other factors relevant to a full and fair assessment of
> the wisdom of the proposed compromise.' " *Wilcox*, 61 Ill. 2d at 317 (quoting *Protective*
> *Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S.
> 414, 424 (1968)).

It is essential for a court of review to "have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law." *TMT Trailer Ferry, Inc.*, 390 U.S. at 434.

¶ 58    In this case, the circuit court of St. Clair County was asked to certify a nationwide, settlement only class, where the primary settlement benefit to the individual settlement class member was a $12 coupon. Accordingly, as we consider Dickenson's objections, we remain mindful of the aforementioned principles related to these types of settlements.

¶ 59                B. Lee's Ability to Represent the Settlement Class

¶ 60    Dickenson's first objection challenges Lee's ability to represent the settlement class. Dickenson reasons that because Lee retained his credit card receipt, he was not at risk for identify theft or credit card fraud, and in the absence of an actual injury, Lee cannot adequately represent those members of the settlement class who suffered, or may suffer, identify theft and actual damages as a result of defendant's noncompliance with FACTA. In response, Lee contends that Dickenson's objection is an improper attempt to contest standing.

¶ 61                                1. Standing

¶ 62    Preliminarily, we note that the issue of standing is one usually raised by the opposing party.

22

Here, Dickenson's status is simply that of a settlement class member. She did not seek to intervene in this action, although, as a settlement class member, she had the right to do so. 735 ILCS 5/2-804(a) (West 2016). Had Dickenson filed a motion to intervene, then, with court approval, she would have been allowed to appear as a party in this action. Instead, she chose to remain a nonparty, seeking to file a pleading in the nature of a motion to dismiss. Because the determination of this objection is critical to other issues raised in this appeal, we will consider Dickenson's protestation that Lee has no claim under FACTA and, therefore, has no standing to represent the settlement class.

¶ 63    The purpose of a class action suit is to allow a representative party to pursue the claims of a large number of people with like claims. *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981). The basic premise of the class action procedure is the fairness of having a proper representative act on behalf of the absent parties. *Miner*, 87 Ill. 2d at 14. In considering the adequacy of representation, the test is whether the interests of those who are parties are the same as those who are not joined and whether the litigating parties fairly represent those who are not joined. *Miner*, 87 Ill. 2d at 14. The plaintiff's claim must not be antithetical to those of other class members, and plaintiff's interests must not appear collusive. *Miner*, 87 Ill. 2d at 14. The representation by the class representative must protect the due process rights of the class members, including the right to be represented by a lawyer who is qualified, experienced, and generally able to conduct the proposed litigation. *Miner*, 87 Ill. 2d at 14; *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 339 (1977).

¶ 64    In this case, Lee alleged a willful violation of FACTA, a statute intended to protect consumers from the risk posed when credit card account information is displayed on printed receipts at the point of sale. 15 U.S.C. § 1681c(g) (2012). When an entity willfully fails to comply with FACTA's truncation requirements, FACTA provides a private cause of action for statutory damages and does not require a person to suffer actual damages in order to seek recourse for a

willful violation of the statute. See 15 U.S.C. § 1681n (2012). This is consistent with the preventative and deterrent purposes of FACTA.

¶ 65    Dickenson claims, however, that when an entity negligently fails to comply with FACTA, the consumer who suffers an actual injury may also have a claim. See 15 U.S.C. § 1681o (2012). Dickenson concludes that because Lee suffered no actual injury under FACTA, he cannot adequately act as the class representative for members of the settlement class who have or may have future claims for actual damages. In support of her objection, Dickenson argues that the United States Supreme Court has held that article III of the United States Constitution requires plaintiffs pursuing statutory damages claims in federal court under section 1681n(a) (15 U.S.C. § 1681n(a) (2012)) to demonstrate that they actually suffered a "concrete" injury as a result of any statutory violations alleged to have been committed, and she relies on *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540 (2016).

¶ 66    By its terms, article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies. U.S. Const., art. III, § 2. As a result, the doctrine of article III standing has developed to ensure that federal courts do not exceed this authority. *Spokeo*, 578 U.S. at ___, 136 S. Ct. at 1547. To satisfy the cases and controversies requirement and establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at ___, 136 S. Ct. at 1547. With regard to the "injury in fact" requirement, a plaintiff must demonstrate "that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo*, 578 U.S. at ___, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In considering what constitutes an "injury in fact," the United States Supreme Court has recognized that Congress may enact laws that "define injuries and

articulate chains of causation that will give rise to a case or controversy where none existed before." (Internal quotation marks omitted.) *Spokeo*, 578 U.S. at ___, 136 S. Ct at 1549. With regard to FACTA claims, it appears the federal courts are divided on what constitutes an actual injury.[7] We need not, however, decide which path is more appropriate to follow under the circumstances of this case, as Illinois courts are not required to follow federal law on issues of justiciability or standing. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 491 (1988).

¶ 67    In *Greer*, the Illinois Supreme Court recognized that state courts are more liberal in recognizing the standing of parties than the federal courts. *Greer*, 122 Ill. 2d at 491. The *Greer* court held that standing in Illinois requires only "some injury in fact to a legally cognizable interest." *Greer*, 122 Ill. 2d at 492. Thus, an injury, whether actual or threatened, must be distinct and palpable, fairly traceable to defendant's actions, and substantially likely to be redressed by the grant of the requested relief. *Greer*, 122 Ill. 2d at 492-93; See *Duncan v. FedEx Office & Print Services, Inc.*, 2019 IL App (1st) 180857, ¶¶ 24-25. The Illinois Constitution vests the circuit courts with "jurisdiction to adjudicate all controversies." *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 530 (2001); Ill. Const. 1970, art. VI, § 9. So long as a case presents a justiciable matter, the circuit court has jurisdiction. See *People ex rel. Scott v. Janson*, 57 Ill. 2d 451, 459 (1974) (where

---

[7]For cases where actual harm was insufficient under FACTA, see *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016); see also *Collier v. SP Plus Corp.*, 889 F.3d 894 (7th Cir. 2018) (*per curiam*); *Crupar-Weinmann v. Paris Baguette America, Inc.*, 861 F.3d 76 (2d Cir. 2017); *Katz v. Donna Karan Co.*, 872 F.3d 114 (2d Cir. 2017); *Hullinger v. Park Grove Inn, Inc.*, No. 3:17-cv-00400, 2018 WL 3040571 (E.D. Tenn. June 19, 2018); *Soto v. Great America LLC*, No. 17-cv-6902, 2018 WL 2364916 (N.D. Ill. May 24, 2018). On the other hand, the following represent cases where actual harm was found for violations of FACTA: *Gennock v. Kirkland's, Inc.*, No. 17-454, 2017 WL 6883933, at *6 (W.D. Pa. Nov. 29, 2017); *Guarisma v. Microsoft Corp.*, 209 F. Supp. 3d 1261, 1265-67 (S.D. Fla. 2016); *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1210 (11th Cir. 2018) (finding that FACTA provides consumers with "the right to enforce the nondisclosure of their untruncated credit card numbers" and concluding that "printing more than five digits of a credit card number in willful violation of FACTA causes the person *** to suffer a concrete injury"), *vacated and superseded by* 922 F.3d 1175 (11th Cir. 2019).

25

a complaint states a case belonging to a general class over which the authority of the circuit court extends, jurisdiction attaches). Under Illinois law, standing is not jurisdictional. Rather, standing is an affirmative defense that is typically the defendant's burden to plead and prove. *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 330 (1997).

¶ 68    After reviewing the record, we find that Lee pleaded sufficient facts to allege a willful violation of FACTA and prayed for statutory damages. Therefore, Lee pleaded a justiciable claim over which the circuit court had jurisdiction. Lee was the only plaintiff named to represent the settlement class, and he submitted himself to the jurisdiction of the St. Clair County circuit court. The Body Shop chose not to raise the issue of standing as an affirmative defense, and objector Dickenson had no standing to do so. Accordingly, Dickenson's objection to Lee's lack of standing was properly denied.

¶ 69                2. The Adequacy of Notice to an Expanded Class

¶ 70    Standing was only one part of Dickenson's objection regarding whether Lee is an adequate class representative. Dickenson also argues that the circuit court erred when it certified a settlement class that included the Loyalty Program Members. She contends that Lee has not demonstrated that he is a Loyalty Program Member or that he is otherwise able to adequately represent the interests of the Loyalty Program Members. Before addressing Dickenson's contentions regarding the Loyalty Program Members, we find it necessary to first consider a related due process issue affecting the composition of the overall settlement class. Our consideration must, necessarily, also include the applicable class period, as defined in the Settlement Agreement and notices.

¶ 71    In the Federal Court Action, the preliminary federal approval order provided that the settlement class period shall run from February 12, 2011, through the date the class is certified for settlement purposes. The settlement class was certified on March 21, 2017. Therefore, the class period in the Federal Court Action ran from February 12, 2011, to March 21, 2017 (Federal Class

Period). There is nothing in the record that allows us to determine why this particular class period was chosen, except that this was class period set forth in the Settlement Agreement. The Federal Class Period, established on March 21, 2017, when the federal court entered its preliminary approval order certifying the settlement class, was included in all of the forms of notice authorized and approved in the Federal Court Action. In other words, the website, the "long form" of notice, and the publication notice all indicated that the Federal Class Period included transactions that occurred from February 12, 2011, through March 21, 2017.[8]

¶ 72    When Lee dismissed his lawsuit in the Federal Court Action and filed it in St. Clair County, he requested that the circuit court certify a proposed class of consumers with a "time period beginning *five years prior to the filing of this lawsuit until the date the class is certified.*" (Emphasis added.) Then, in Plaintiff's Unopposed Motion for preliminary approval, Lee redefined the class period as beginning February 12, 2011, to the date the class is certified for settlement purposes. For reasons not explained in this record, Lee did not adopt the Federal Class Period as the relevant consumer transaction period. When the St. Clair County circuit court preliminarily certified the settlement class, the circuit court's order comported with the language in Plaintiff's Unopposed Motion for preliminary approval and certified a settlement class extending from "February 12, 2011 to the date the class is certified for settlement purposes." The preliminary approval order was entered on November 7, 2017. Consequently, the class period in the state court action (Illinois Class Period) ran from February 12, 2011, through November 7, 2017, approximately seven months longer than the federal class period in the Federal Court Action.

¶ 73    The preliminary approval order, drafted by class counsel, extended the settlement class

---

[8]The long form direct notice provided to the Loyalty Program Members and the publication notice indicated that the class transaction period was between February 12, 2011, and March 21, 2017. See Exhibits A and B of Baker declaration, July 21, 2017.

27

period, thereby potentially enlarging the overall settlement class. This may have represented an oversight on the part of class counsel, but we cannot substitute supposition for the facts set forth in the record. There is simply no indication that anyone recognized that the settlement class period was longer in the state court action. Nevertheless, class counsel suggested to the circuit court that the settlement class had already received adequate notice. Additionally, in the preliminary approval order entered November 7, 2017, the circuit court directed that only the website "be updated to reflect that the class action has been re-filed before this Court."[9] The circuit court also directed that the website "shall include a copy of the complaint filed in this action, as well as a copy of this Order, and the Settlement Agreement." But, for those new class members, added from March 21, 2017, through November 7, 2017, there was no notice, direct or by publication, and no additional opportunity to opt-out or file objections.

¶ 74    The class period is an important factor in determining whether certification of a class is "an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4) (West 2016). One reason the class size is significant is because one of the primary objectives of a class action, at least from the defendant's perspective, is to obtain a release of liability as to all class members for claims alleged to have occurred during the class period. In order for a circuit court to enter such an order, the court must obtain personal jurisdiction over all of the members of the settlement class, whether or not they reside in Illinois. Once the court has obtained personal jurisdiction over members of the settlement class, the court can then release any and all future FACTA claims against The Body Shop, provided certain conditions are satisfied.

¶ 75    The basis for a state court's ability to release FACTA claims for nonresident class members is found in the Full Faith and Credit Act (28 U.S.C. § 1738 (2012)). The statute mandates that the

---

[9]"This Court" is the St. Clair County state court.

28

judicial proceedings of any State "shall have the same full faith and credit in every court within the United States *** as they have by law or usage in the courts of such State *** from which they are taken." (Internal quotation marks omitted.) *Matsushita Electric Industrial Co. v. Epstein*, 516 U.S. 367, 373 (1996). In *Matsushita*, the state court judgment was the product of a class action and incorporated a Settlement Agreement releasing claims that were within the exclusive jurisdiction of the federal courts. *Matsushita*, 516 U.S. at 373. The United States Supreme Court looked first to whether the settlement agreement involved was incorporated into the final judgment. Finding that the settlement agreement was a part of the final order, the Court then examined whether the law of the state would operate to bar future claims of the same kind referenced in the class action. The Court found that the claims at issue were incorporated as part of the release and that the release was included in the final judgment. The Court also found that the state court had made a specific finding that the settlement was fair, reasonable, and adequate and in the best interests of the settlement class. Finally, the Court looked at the notice given to class members and noted that the state court had made a finding that notice to the class "was in full compliance with *** the requirements of due process." (Internal quotation marks omitted.) *Matsushita*, 516 U.S. at 378. In an historic decision, the *Matsushita* Court concluded that, as a general proposition, "even when exclusively federal claims are at stake, there is no universal right to litigate a federal claim in a federal district court." (Internal quotation marks omitted.) *Matsushita*, 516 U.S. at 385. Simply put, a state court has the ability to release all claims—state and federal—provided that the settlement contains a specific, contractual agreement to do so, approved by the court as fair and reasonable, and that notice of the release of the claims complies with constitutional notions of due process. Once the procedural requirements of due process are met, any individual within the class period who does not opt-out will automatically have their claims released. In this case, it was incumbent upon the circuit court to ensure that the members of the Illinois class period had the

process they were due.

¶ 76    Another important consideration related to the class period, generally, concerns whether the class member identified should (or should not) be included within the class. In this litigation, the expansion of the Illinois class period may have resulted in more FACTA violations, thereby increasing the number of class members. Whether the addition of class members occurred before or after The Body Shop resolved its problems with FACTA compliance remains at issue and creates a due process concern that cannot be ignored by the court. The concern in extending the size of the settlement class is dependent upon the language of the release. Here, the definition of the released claims was exceptionally broad, as Dickenson has pointed out. For example, the language of the released claims includes,

> "any and all claims, rights, demands, obligations, actions, causes of action, suits, cross-claims, matters, issues, liens, contracts, liabilities, damages, agreements, costs and expenses, of whatever kind, nature or description, irrespective of legal theory, whether based on federal, state, local, statutory, or common law, or any other law, rule or regulation, including both known and unknown claims, accrued and un-accrued claims, foreseen and unforeseen claims."

Given the broad language of the released parties, the circuit court had an obligation to consider the implications of having extended the Illinois class period beyond that defined by the federal court. Its failure to do so was an abuse of discretion.

¶ 77    The parties have argued that the federal court went to great lengths to make sure that notice to the settlement class members was the best notice practical under the circumstances in compliance with Rule 23(c)(2) of the Federal Rules of Civil Procedure. All forms of that notice represented that the Federal Class Period ended on March 21, 2017. As previously noted, the St. Clair County circuit court adopted and approved the notice forms that were used in the Federal

30

Court Action. This created another error, as the circuit court certified a class period that ended November 7, 2017, thereby creating a conflict between the federal court notice forms and the end date for the Illinois Class Period. As a result, the St. Clair County circuit court failed to account for notice to those settlement class members included from March 21, 2017, to November 7, 2017.

¶ 78    The Illinois class period presents additional due process concerns regarding the lack of notice provided, generally, for the proceeding filed in the state court, as well as for those recently added class members. In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985), the United States Supreme Court held that a class representative may file a class action in a jurisdiction that would otherwise not have jurisdiction over absent class members as long as the absent class members are provided with minimal procedural due process protection. The Court further held that if the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, "it must provide minimal procedural due process protection." *Shutts*, 472 U.S. at 811-12.

¶ 79    The *Shutts* Court went on to explain that procedural due process would require the following: (1) the plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel; (2) the notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections; (3) the notice should describe the action and plaintiffs' rights in it; (4) an absent plaintiff must be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court; and (5) the named plaintiff must at all times adequately represent the interests of the absent class members. *Shutts*, 472 U.S. at 812.

¶ 80    Notice is the cornerstone of class action practice. In the absence of adequate notice, absent class members may release claims they are unaware are being litigated on their behalf. As a critical

31

part of the class action process, providing notice that is the best practicable, and reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action, is the only way for absent class members to learn that a class action has been initiated in a court of law. The stringent requirements for adequate notice allow absent class members an opportunity to present their objections so that their individual rights may not be foreclosed upon without due process of law. Inadequate notice also raises the risk that the rights of absent class members may be compromised without their consent, by representatives whom they have not selected. The class action attorney, not the class members whose rights are at stake, makes all of the important decisions: whether to file a claim, how much time and effort to invest in pursuing it, what litigation strategy to employ, and finally whether and on what terms to settle. Thus, adequate notice provides the assurance of structural fairness that allows absent class members to decide whether to opt-out of the class, or file an objection, and plays a central role in the jurisdiction of the court over absent members of the class certified.

¶ 81    Our Illinois class action statute requires that, "Upon a determination that an action may be maintained as a class action, or at any time during the conduct of the action, the court in its discretion may order such notice that it deems necessary *to protect the interests of the class and the parties*." (Emphasis added.) 735 ILCS 5/2-803 (West 2016). The language of the Illinois statute is quite general, without any specific guidelines, and provides the courts with a great deal of discretion in circumstances where the court considers notice desirable. In stark contrast, Federal Rule of Civil Procedure 23(c)(2)(B) requires that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language:

32

"(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

¶ 82    The requirements set forth in Rule 23(c)(2)(B) were fashioned after years of Supreme Court rulings addressing the best notice practicable. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 311 (1950), an objector appeared before the lower court claiming that notice was inadequate to afford due process under the fourteenth amendment, and therefore that the court was without jurisdiction to render a final and binding decree. In considering the question of notice, the Supreme Court remarked,

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane*, 339 U.S. at 313.

The Court went on to state, "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane*, 339 U.S. at 314. The Court explained that in any proceeding where the parties seek finality of the pending action, the notice given to absent participants must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action

33

and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Thus, "when notice is a person's due, process which is a mere gesture is not due process." *Mullane*, 339 U.S. at 315.

¶ 83    Subsequently, in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974),[10] the Supreme Court had the occasion to consider what kind of notice would constitute the "best notice practicable." In *Eisen*, the United States Supreme Court made clear that when notice is a person's due, the best practicable notice, under the circumstances, requires individual notice be given to identifiable class members. *Eisen*, 417 U.S. at 175. The Court stated that "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case." *Eisen*, 417 U.S. at 176. The Court found that in order to satisfy due process requirements, the notice must inform the class member that he may request exclusion from the action, and thereby preserve his opportunity to pursue his claim separately, or that he may remain in the case and be a part of the action. *Eisen*, 417 U.S. at 176.

¶ 84    For those members of a class who cannot be identified, the courts have allowed for publication. *Mullane*, 339 U.S. at 317. But courts have often requested plaintiff's counsel to provide information identifying the "reach" of the notice. In other words, depending on who comprises the class, and the number of class members, the court must decide which publication is most likely to reach the intended class members. For example, a class of engineers may, more likely, be reached through a trade journal, depending on the cause of action.

¶ 85    In this case, Dickenson objected to the notice given the unidentified members of the settlement class. She questioned whether notice by publication in USA Today was the best possible notice to unidentified class members. Under our class action statute, questions regarding whether

---

[10]This case is often referred to as *Eisen IV*.

to give notice and the types of notice to be given are within the discretion of the circuit court, and the exercise of the court's discretion is limited by the dictates of due process. 735 ILCS 5/2-803 (West 2016); *Frank v. Teachers Insurance & Annuity Ass'n of America*, 71 Ill. 2d 583, 595 (1978). Given the circumstances surrounding the filing of this proceeding in state court, the objections regarding the adequacy of representation by Lee and class counsel, the claim that class members have differing interests, the protestation to the Settlement Benefit offered in the Settlement Agreement, and the questions surrounding the expanded Illinois Class Period, due process requires the giving of notice anew of the pending state court settlement to absent class members so that they have the opportunity to protect their own interests. See *Frank*, 71 Ill. 2d at 595.

¶ 86    In summary, this Settlement was prepackaged when it landed on the steps of the St. Clair County courthouse. Notice had been given to members within the federal class period, which ended on March 21, 2017. Class counsel sought to have their federal court Settlement Agreement approved by the state court, as a federal court had already given the settlement preliminary approval, and notice had been sent. That said, class counsel provided absolutely no information to the circuit court that explained the expansion of the settlement class by seven months, thereby creating the Illinois class period. Similarly, class counsel did not provide the court with a notice plan that would have protected the due process rights of the absent class members, generally, in light of the state court filing. Under the circumstances here, due process required giving notice to the settlement class members of the dismissal of the Federal Court Action and the filing of the suit in state court. This notice should have extended to class members within the expanded Illinois class period and should have been the best notice practicable under the circumstances. Notice that complied with the requirements of due process may have meant giving direct notice anew to the Loyalty Program Members, but that is a matter left for the circuit court to decide once it has sufficient information to do so. In our view, the circuit court failed to require class counsel to

provide the information necessary to craft a notice plan that guarded the due process rights of the absent class members.

¶ 87 After reviewing the record, we find that the circuit court did not acquire personal jurisdiction over the settlement class members, including those within the Illinois class period, as the court failed to protect the due process rights of the absent class members. Therefore, the circuit court's Order of Final Approval entered December 20, 2017, must be vacated, and this cause remanded for further proceedings. We next consider the remaining objections raised by Dickenson as these are likely to arise on remand.

¶ 88                                    3. The Loyalty Program Sub-Class

¶ 89 We first consider Dickenson's objection as it pertains to the Loyalty Program Members. We note at the outset that for these members of the settlement class, there is a different definition describing the class period. In both the Federal Court Action and the Illinois court litigation, the class period is specifically limited to transactions between April 23, 2014, and January 9, 2016. No explanation appears in the record as to why this class period was selected in light of the much larger class period for the other members of the settlement class.

¶ 90 According to the record, Lee did not include the Loyalty Program Members in the complaints filed in federal court and state court. The Loyalty Program Members were first introduced in the Settlement Agreement, presumably because The Body Shop had the names and e-mail addresses and/or "physical" addresses of these customers, thereby allowing The Body Shop to specifically identify these settlement class members. By carving out this group of individuals from the settlement class, the parties created a sub-class. Lee claims that this sub-class simply identified a group of settlement class members who were known customers and within the scope of the settlement class. Thus, it would be clear to The Body Shop that these customers qualified for inclusion in the overall settlement class, without having to search its records to determine

36

whether they made a purchase during the separately abridged class period. Because The Body Shop could identify these customers, direct notice was constitutionally required. Therefore, in the Federal Court Action, these customers received direct notice of the settlement and were specially designated as the "Direct Notice Settlement Class Members."

¶ 91    A sub-class is allowed under section 2-802(b), and each sub-class is treated as a separate class action. 735 ILCS 5/2-802(b) (West 2016). In other words, each sub-class is judged by the same rules that apply to the overall class. After reviewing the record, a number of red flags are raised regarding the sub-class. Here, as part of the Settlement Agreement, plaintiff included the approximately 350,000 members of defendant's "Love Your Body™ Loyalty Program" for whom The Body Shop had e-mail or "physical" addresses and who made a debit or credit card transaction at any of The Body Shop's retail locations in the United States between April 23, 2014, and January 9, 2016. Lee requested that he be appointed the class representative for the entire settlement class, which included the sub-class of Loyalty Program Members. Lee did not designate a separate individual to represent the sub-class.

¶ 92    The Settlement Agreement clearly indicates that the Loyalty Program Members were treated differently than the remaining members of the settlement class. First, the Loyalty Program Member sub-class received direct notice of the settlement. This, alone, may not have constituted a sufficient conflict of interest to disqualify plaintiff as the class representative, as these class members could be identified by The Body Shop. A second concern that went unaddressed by Lee and class counsel was the fact that the overall settlement class members received a different benefit than the Loyalty Program Member sub-class. Specifically, the Loyalty Program Members did not have to file a claim form, as they received the Settlement Benefit automatically, as a result of the participation by the class member in the loyalty program. Each person in the Loyalty Program Member sub-class, during the abbreviated sub-class period, automatically received an activation

37

code via e-mail. The burden was on the Loyalty Program Member to activate the code. The activation code had an expiration period of six months, but once the code was activated, the Loyalty Program Member received the benefit of a $12 coupon that could be used to make a purchase at one of defendant's retail establishments. settlement class members, other than those in the Loyalty Program Members sub-class, had to file a claim form in order to have the opportunity to collect on the Settlement Benefit. The settlement administrator was charged with the responsibility of verifying the validity of the claim.

¶ 93    In accordance with the Illinois class action statute, prior to certification of this sub-class, the circuit court was obligated to determine whether Lee could serve as an adequate representative of the overall class and the sub-class. There is nothing in the record to indicate whether Lee was, or was not, a member of the "Love Your Body™ Loyalty Program." We know from the record that Lee did not designate a separate individual to represent this sub-class. Class counsel did not inform the circuit court of the reason for the creation of this sub-class and did not offer any submissions that would have allowed the circuit court to determine whether Lee could act as a representative for each class. In addition to determining whether Lee could adequately represent both classes, the circuit court was also obligated to determine whether class counsel had any conflicts of interest by representing each class. Again, there is nothing in the record to indicate class counsel offered the circuit court any information from which to conclude that Lee and class counsel were adequate representatives for each class.

¶ 94    In our view, from the pleadings on file, the creation of this sub-class and the terms of the Settlement Agreement created multiple potential conflicts of interest for the class representative and class counsel that were not questioned by the circuit court. It bears repeating that when presented with a "settlement-only class," it is incumbent upon the circuit court to raise questions and demand answers, prior to approving a settlement agreement, particularly where there are

indications that the agreement might offend basic notions of due process. See *Amchem Products*, 521 U.S. at 620.

¶ 95    Whether or not Lee was an adequate class representative in light of the sub-class created and the different benefits provided cannot be determined based upon the record before us. As presently defined, it is unclear whether members of the sub-class have suffered a FACTA violation, which is problematic. We agree with Dickenson that there was insufficient proof that Lee was an adequate class representative for the classes created by the Settlement Agreement, and no information was tendered that allowed the circuit court to determine whether class counsel could overcome the potential conflict of interest caused by the different benefits allowed to settlement class members. On remand, class counsel will have the opportunity to provide the court with sufficient evidence to allow for a determination of whether plaintiff could represent both the settlement class as the class representative and represent the Loyalty Program Member sub-class. Counsel will also be able to address the issue of whether additional counsel should be appointed to represent the sub-lass.

¶ 96    Dickenson also contends that the Settlement Agreement lacks protections for those settlement class members who were actual victims of identity theft or credit card fraud, who may become victims in the future, and who have or will suffer actual damages as a result of defendant's FACTA violations. This subset of individuals is included within the definition of the Settlement Class, even though Lee has sought only statutory damages in his complaint. Under the terms of the Settlement Agreement, the potential claims for actual damages that may occur in the future are compromised and released in exchange for a $12 gift card. On remand, the parties will have the opportunity to address whether the Release will have to be modified to exclude these claims.

¶ 97                    4. The Fairness and Adequacy of the Settlement

¶ 98    Dickenson also claims that the settlement herein was not fair and reasonable and should

39

not have been approved by the circuit court. Dickenson contends that the circuit court failed to consider the *Korshak* factors prior to approving the settlement. Using those factors, and from her limited access to documentation, Dickenson has identified perceived conflicts of interest and terms which she claims are unfair.

¶ 99    In *City of Chicago v. Korshak*, the First District opined that

> "[t]he determination of whether a settlement is fair, reasonable and adequate requires the examination of an amalgam of factors, the principle factor is a balancing or comparison of the terms of the compromise with the likely rewards of litigation, as well as a determination of whether the settlement is in the best interests of all those who will be affected by it."
>
> *Korshak*, 206 Ill. App. 3d at 972.

The court then went on to identify certain factors that seemed to consistently be of relevant consideration to the fairness determination in class actions case. The list of factors included the strength of plaintiffs' case balanced against the money and relief offered in the settlement; the defendant's ability to pay; the complexity, length, and expense of further litigation; the amount of opposition to the settlement; the presence of collusion in reaching the settlement; the class members' reaction to the settlement; the opinion of competent counsel; and the stage of proceedings and amount of discovery completed. *Korshak*, 206 Ill. App. 3d at 972. While we do not conclude that the determination of whether a settlement is fair and reasonable should be based on the inclusion of every factor identified by the *Korshak* court, we do agree that these factors are relevant, among other factors, when considering whether to grant final approval to a class settlement.

¶ 100    With these factors in mind, we initially consider Dickenson's contention that the settlement was a product of collusion. Dickenson argues that defendant engaged in plaintiff-shopping, a process sometimes called a "reverse auction," and then negotiated a "coupon settlement." She

claims that defendant was facing two other FACTA actions in federal courts at the time the Settlement was reached with Lee and his representatives. Dickenson contends that class counsel negotiated a minimal coupon settlement for the class, while obtaining a $4000 incentive for the class representative and an award of $500,000 for class counsel.

¶ 101   Plaintiff-shopping or a "reverse auction" occurs when a defendant who is facing class litigation in more than one forum attempts to negotiate a settlement with inexperienced or inferior class counsel with the hope that the court will approve a weak settlement that will preclude the other suits against the defendant. *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 282 (7th Cir. 2002). Judge Posner has described the situation as one in which ineffectual class counsel would happily "sell out a class they anyway can't do much for" in exchange for generous attorney fees, and the defendants are happy to pay generous attorney fees "since all they care about is the bottom line," not the allocation of money between the class settlement and the attorney fees. *Reynolds*, 288 F.3d at 282.

¶ 102   A "coupon settlement" is one in which the class members receive essentially valueless coupons while class counsel receives substantial attorney fees. Given concerns over these types of settlements, Congress amended Title 28 with the Class Action Fairness Act of 2005 (CAFA) (Pub. L. No. 109-2, 119 Stat. 6) to require judicial scrutiny of attorney fee awards in coupon cases. See 28 U.S.C. § 1712 (2012). Although CAFA is not applicable to this case, the public policy concerns regarding coupon settlements are certainly noteworthy. For example, under CAFA, the federal district court is required to hold a hearing and make a written finding that "the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e) (2012). Class counsel is expected to provide the court with expert valuations that predict the redemption rate for the coupon and the overall value of the coupon to the class, if asked to do so by the court. 28 U.S.C. § 1712(d) (2012). Further, in the context of a class action settlement, a settlement coupon provides " 'a

discount on another product or service offered by the defendant in the lawsuit' with the critical factor being that the nonpecuniary benefit 'forces future business with the defendant.' " 4 William B. Rubenstein, Newberg on Class Actions § 12.11 (5th ed. 2014) (hereinafter Newberg on Class Actions). Therefore, the use of a coupon here is an important marketing tool from The Body Shop's point of view, as the settlement class member can only use the $12 settlement benefit at one of defendant's establishments, or online. Consequently, coupon settlements are troublesome in that they provide scant compensation, are unlikely to deter corporate misbehavior, and compel class members to continue its relationship with the offending party. Newberg on Class Actions § 12.8.

¶ 103   Class counsel indicated in its pleadings that the value of the $12 Settlement Benefit to the settlement class members was $4,372,248. Simple mathematics reveals that if one takes the value of the $12 gift card and multiplies it by the number of Loyalty Program Members (364,354) the equation equals $4,372,248. In other words, class counsel and the defendant represented that the value of the Settlement assumed a 100% redemption rate for the Loyalty Program Member sub-class. One issue not considered by any of the parties was the number of transactions that allegedly occurred during the truncated class period for the Loyalty Program Member sub-class. Recall that Plaintiff's Unopposed Motion for preliminary approval of the settlement class claimed that The Body Shop had estimated there were 3,656,931 credit and debit card transactions between April 23, 2014, and January 9, 2016. Had the court multiplied this number by $12, the total would have been $43,883,172. If there were 3,656,931 transactions in the 20-21 months class period for the Loyalty Program Member sub-class, one can only imagine how many millions of transactions occurred during the 6-plus years for the Illinois class period. We agree with objector that the circuit court should have been more circumspect of the values suggested by class counsel. At a minimum, some extrinsic evidence should have been provided to the circuit court supporting a redemption rate of 100%.

¶ 104   In addition, Dickenson objected to the incentive fee to be paid to the class representative. Class counsel negotiated an incentive payment of $4000 for Lee, while all other members of the class received a $12 gift card. Incentive payments raise questions about collusion and whether the interests of the class have been relegated to a less prominent role in the litigation. Again, without any actual showing of the time and effort expended by the class representative in assisting in the prosecution of the litigation, or in bringing added value to bear, and any other risks or burdens carried by the class representative, the circuit court approved an incentive award of $4000. On remand, the court must consider whether the $4000 incentive is proportionate or grossly disproportionate to the $12 settlement benefit that absent class members will receive under this settlement, and the plaintiff will have the burden to justify this award.

¶ 105   Dickenson has also objected to the award of attorney fees. The court approved an award of $500,000 in attorney fees, but there is no indication for the basis for the award. We previously noted Lee's argument that this settlement was achieved after an exchange of discovery and intense, lengthy negotiations between counsel for both parties, with the assistance of an able mediator, and that the negotiation of attorney fees was commenced only after the settlement was agreed upon. The record, however, does not contain a report from the mediator and does not contain any documents or other information provided during discovery or during the mediation. The parties did not provide the circuit court with a transcript from the preliminary approval hearing in the Federal Court Action. Thus, the circuit court had only the petition for fees produced by class counsel during the final fairness hearing.

¶ 106   The claim that attorney fees were negotiated only after the settlement had been reached is relevant to Dickenson's claim of collusion. The attorney fees award negotiated by class counsel in the amount of $500,000 was to be paid by The Body Shop and was not opposed. As previously noted, class counsel did file a petition for fees, supported by affidavits. In support of this petition,

class counsel argues that there is a reasonable relationship between the amount of the fee awarded and the results obtained. Counsel claims that they took on a substantial risk in filing the suit with no guarantee of payment and that the suit was a complex class action suit involving a federal statute that generates little litigation.[11] Counsel also claims that if every coupon is used, this represents a $4.3 million benefit to the settlement class. Again, class counsel offers no data or other information to indicate the likely percentage of gift cards that will be redeemed in whole or in part. Class counsel also argued that the injunctive relief was an additional benefit to the class. This claim, however, rings hollow, as counsel for The Body Shop indicated that the defendant had already fully complied with FACTA. Class counsel did not attempt to place a value on this benefit. Therefore, if the injunctive relief is to be valued at all, some expert testimony may be necessary to support such a claim.

¶ 107   We have not analyzed the affidavits filed in support of the petition for attorney fees, but simply note that this type of attorney fee arrangement with defendant is often referred to as a "clear sailing" provision. In a typical "clear-sailing" clause, the defendant agrees not to oppose a fee award up to a certain amount. *In re Southwest Airlines Voucher Litigation*, 799 F.3d 701, 705 (7th Cir. 2015). The concern with such provisions is that the separate negotiation of attorney fees presents the opportunity for the attorneys to trade relief to the class for a higher fee for themselves. This may be particularly true where, as here, the plaintiffs have not claimed actual damages. Further, these provisions must be scrutinized because an award by the court of less than the full $500,000 in fees will not inure to the benefit of the class but will instead revert to defendant.

¶ 108   Judge Posner has commented on the potential for collusion in "clear-sailing" clauses in settlement agreements in *Redman*, 768 F.3d at 637. In *Redman*, Judge Posner noted that because

---

[11]Class counsel's contention appears at odds with the legislative history surrounding FACTA claims. See Clarification Act, Pub. L. No. 110-241, § 2, 122 Stat. 1565.

it is in the defendant's interest to contest the request for attorney fees in order to reduce the overall cost of the settlement,

> "the defendant won't agree to a clear-sailing clause without compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider. The existence of such clauses thus illustrates the danger of collusion in class actions between class counsel and the defendant, to the detriment of the class members." *Redman*, 768 F.3d at 637.

¶ 109 At the final fairness hearing on December 20, 2017, the circuit court entered a final approval order which states, in part, as follows:

> "7. The Court gave due consideration to, among other things, the uncertainty of whether a class would be certified for any purpose other than a settlement; the strength of the case for Plaintiff and the Settlement Class on the merits, balanced against the money or other relief offered in settlement; the defendant's ability to pay; the complexity, length, and expense of further litigation; the amount of opposition to the settlement; the presence of collusion in reaching a settlement; the reaction of the members of the class to the settlement; the opinion of competent counsel; and the stage of proceedings and the amount of discovery completed.

> 8. The Court finds the settlement terms, as set forth in the Settlement Agreement, are fair, reasonable, and adequate in light of its consideration of the foregoing factors.

> 9. The payment of a $12 gift card to each class member who did not opt out from the Settlement, as provided under the Settlement Agreement, constitutes fair value given in exchange for the release of the Released Claims against the Released Parties, as those terms are defined below and in the Settlement Agreement executed by the parties. The Court finds that the consideration to be paid to Class Members, namely, the $12 gift card,

is reasonable, fair and adequate considering the facts and circumstances of the transactions at issue, the type of claims and affirmative defenses asserted in the Action and other FACTA litigation over several years, and the potential risks and uncertainty which would be assumed by parties were they to alternatively decide to pursue this litigation to a trial on the merits."

¶ 110   The circuit court's findings are not supported by the common law record and the report of proceedings. By addressing Dickenson's objections, we have specifically identified those areas where the parties simply failed to provide the circuit court with sufficient information to scrutinize this settlement. The parties have acknowledged that a substantially identical class action complaint was originally filed in the federal district court in New York. According to the briefs, the parties litigated the case in that forum for about 18 months, exchanging discovery and meeting with a nationally recognized mediator. By February 2017, the parties had reached an agreement to settle the case. Following hearings in February 2017 and March 2017, the federal district court granted conditional certification of the settlement class and preliminary approval of the Settlement Agreement. According to the representations of plaintiff Lee, the federal court entered orders implementing a notice plan to members of the settlement class; set time limits for requesting to opt-out, intervene, or file objections; and scheduled a hearing for final approval. But, none of that activity is memorialized within the record before us.

¶ 111   The circuit court in St. Clair County preliminarily approved the settlement within three weeks of the filing of the lawsuit. Although we have no way of knowing what was presented to the trial court beyond the complaint, and the Plaintiff's Unopposed Motion, we do know that by October 17, 2017, Lee and his counsel had access to a multitude of documents that could have been used to assist the circuit court in its determination. None of those documents were filed in the record. There is no transcript of proceedings from the preliminary approval hearing and so we do

not know what, if any, inquiries were made by the trial court. What is evident from the record is that the preliminary approval order was entered during the parties' first appearance date. Plaintiff provided a proposed order granting preliminary approval of the class action settlement, and conditional certification of the proposed settlement class. The proposed order also included provisions appointing Lee as class representative and plaintiffs' counsel as class counsel. The motion asked the circuit court to approve the prior notice to the settlement class that had been crafted with the assistance of the federal judge in New York and further requested that a date be set for a final approval hearing. This proposed order was the same order that had been entered in the Federal Court Action. The only modifications made to this order were the requirements to given notice to the objectors from the Federal Court Action, for class counsel to submit the opt-outs and objections from the Federal Court Action, and a date for filing fee petitions. The order also set a date for a report by the settlement administrator and a date for a hearing on final approval.

¶ 112   The circuit court was presented with what was represented as a Settlement that had already been reviewed and preliminarily approved by a federal district court. However, Lee voluntarily dismissed his action in the federal court and took the entire package to an Illinois state court. Unfortunately, for the Parties, the effect of the voluntary dismissal was to leave the situation as though it had never been brought, thus vitiating and annulling all prior proceedings and orders in the case. See *A.B. Dick Co. v. Marr*, 197 F.2d 498, 502 (2d Cir. 1952). Moreover, based on the record, the trial court had precious little evidence regarding the background of the litigation when it granted preliminary approval. Lee was asking the circuit court to blindly adopt a preliminary order of the federal court, without conducting a hearing or taking any evidence.

¶ 113   Subsequently, when the parties appeared for the final fairness hearing, the trial court heard brief arguments from class counsel, defendant, and counsel for the sole objector, before stating that it had "heard enough" and would approve the settlement. No testimony or evidence was

presented. Accordingly, on this record, we are unable to determine whether the trial court evaluated the merits of the cause of action, the prospects and problems of litigating the cause, or the fairness of the terms of compromise. The record is devoid of facts that would have permitted a reasoned judgment that the class settlement was fair, reasonable, and in the best interests of all affected.

¶ 114   A judge asked to approve the settlement of a class action must not assume a passive role when there is a genuine conflict of interest, as present here.

> "A trial judge's instinct, in our adversarial system of legal justice, is to approve a settlement, trusting the parties to have negotiated to a just result as an alternative to bearing the risks and costs of litigation. But the law quite rightly requires more than a judicial rubber stamp when the lawsuit that the parties have agreed to settle is a class action. The reason is the built-in conflict of interest in class action suits." *Redman*, 768 F.3d at 629.

In accepting the bald representations of counsel for both parties, the circuit court abdicated its role as the guardian of the interests of the absent class members.

¶ 115   The trial court's acceptance of the Settlement Agreement without any inquiry or apparent analysis was an abuse of discretion. It may well be that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of the settlement class members, but we cannot make those decisions in this opinion. In fact, like the circuit court, we simply do not have sufficient information to render an opinion as to the actual fairness of the proposed settlement, given the present record. A remand is necessary so that the trial court can act as a guardian for the absent class members and carefully scrutinize the settlement terms. As Judge Posner observed in *Culver v. City of Milwaukee*, "The class action is an awkward device, requiring careful judicial supervision, because the fate of the class members is to a considerable extent in the hands of a single plaintiff ***." 277 F.3d 908, 910-11 (7th Cir. 2002).

¶ 116                          III. CONCLUSION

¶ 117    After reviewing this record, we find that class counsel failed to offer the court a notice plan that protected the due process rights of the Illinois class. Under the circumstances here, due process required notice instructing the settlement class members that the Federal Court Action had been dismissed and a new action had been filed in state court. Accordingly, the circuit court did not acquire personal jurisdiction over the settlement class members, including those within the Illinois Class Period. Therefore, the circuit court's Order of Final Approval entered December 20, 2017, is hereby vacated and the cause remanded for further proceedings.

¶ 118    On remand, the parties and the circuit court must begin anew. First, the parties must decide whether they want to redefine the settlement class, and/or sub-class. They must also decide whether they want to present the same settlement to the circuit court. The circuit court, upon proper motion, may consider granting leave to file amended pleadings to ensure that the settlement proposed comports within the bounds of fairness and reasonableness. Regardless of the decisions made by the parties, if and when the circuit court is asked to approve a settlement only class, the first issue to be addressed is the creation of a notice plan that will ultimately provide the circuit court with jurisdiction over absent class members. Class counsel is responsible for providing the information necessary to craft the notice plan that protects the due process rights of all members of the settlement only class, including Loyalty Program Members. Depending upon the circumstances presented, the court must consider whether direct notice is the best notice practicable, and whether notice by publication is sufficient. Should the court consider publication, then further inquiry must be made with regard to whether a newspaper, such as USA Today, would have sufficient reach to satisfy due process.

¶ 119    Further, the parties must address the rationale for their apparent abandonment of the Federal Class Period and the adoption of the Illinois Class Period. The parties must also explain

49

why the Loyalty Program Member sub-class was created with dates that are different from the existing Illinois Class Period.

¶ 120    In addition, the circuit court must conduct an independent examination of the negotiation process that led to the settlement, considering whether the settlement resulted from an arm's length negotiation between experienced and skilled litigators, and whether class counsel engaged in sufficient discovery necessary to effectively represent the interests of all settlement class members. The court must determine whether the conflicts raised by the creation of the Loyalty Program Member sub-class are insurmountable. Can Lee represent both the settlement class and the Loyalty Program Members or are the conflicts simply impossible to resolve. The same inquiry must be made regarding class counsel, as there appears to be an inherent conflict of interest for counsel to represent both the overall settlement class and the sub-class. Clearly, the circumstances that gave rise to the filing of this case in St. Clair County must also be considered so that the circuit court is confident that this case is not in state court as a result of a "reverse auction" between the parties. The issue of collusion, as a result of the allegation of a "reverse auction" settlement and the "clear sailing" provision, must also be addressed, and the circuit court must be satisfied that class counsel independently negotiated the "best deal" they could before the issue of attorney fees was raised. The circuit court, on remand, is faced with a formidable task in scrutinizing the terms of a settlement-only class, giving due consideration to its overall fairness, and making an inquiry into all relevant factors, including the range of reasonableness of the Settlement Benefit in light of the best possible recovery and the attendant risks of litigation.

¶ 121    In conclusion, after reviewing the record, we find that the parties failed to provide the circuit court with sufficient information to allow the court to scrutinize the terms of the Settlement to ensure the presence of procedural due process, substantive fairness, and the absence of collusion. Accordingly, the judgment order granting final approval of the class settlement is hereby vacated,

and the cause is remanded for further proceedings consistent with this opinion.

¶ 122   Judgment vacated; cause remanded with instructions.

2019 IL App (5th) 180033
NO. 5-18-0033
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

HENRY LEE, on Behalf of Himself and All Others )    Appeal from the
Similarly Situated,                            )    Circuit Court of
                                               )    St. Clair County.
         Plaintiff-Appellee,                   )
                                               )
v.                                             )    No. 17-L-604
                                               )
BUTH-NA-BODHAIGE, INC., a Delaware             )
Corporation, d/b/a The Body Shop, and          )
DOES 1-10,                                     )
                                               )
         Defendants-Appellees                  )    Honorable
                                               )    Vincent J. Lopinot,
(Jenna Dickenson, Objector-Appellant).         )    Judge, presiding.

_____

**Opinion Filed:**          September 6, 2019

_____

**Justices:**        Honorable Judy L. Cates, J.

                     Honorable James R. Moore, J., and
                     Honorable John B. Barberis, J.
                     Concur

_____

**Attorneys**        Natalie T. Lorenz, Laura E. Schrick, Mathis, Marifian & Richter, Ltd.,
**for**              23 Public Square, P.O. Box 307, Suite 300, Belleville, IL 62220;
**Appellant**        Eric A. Isaacson (*pro hac vice*), Law Office of Eric Alan Isaacson, 6580
                     Avenida Mirola, La Jolla, CA 92037-6231

_____

**Attorneys**        Christopher M. Murphy, McDermott, Will & Emery LLP, 444 West
**for**              Lake Street, Suite 4444, Chicago, IL 60606; Kerry A. Scanlon,
**Appellees**        Jeremy M. White, McDermott, Will & Emery LLP, 500 North Capitol
                     Street NW, Washington, D.C. 20001 (for Buth-Na-Bodhaige, Inc.)

                     Joshua C. Dickinson, Spencer Fane LLP, 13520 California Street, Suite
                     290, Omaha, NE 68154; Thomas W. Hayde, Spencer Fane LLP, 319
                     North Fourth Street, Suite 300, St. Louis, MO 63102; Robert L. Lash,
                     Hur & Lash, LLP, 390 Fifth Avenue, Suite 900, New York, NY 10018
                     (for Henry Lee)

_____